**Gail N. ROLLER, Plaintiff-Appellant,**

v.

**CITY OF SAN MATEO et al.,
Defendants-Appellees.**

**No. 75–3006.**

United States Court of Appeals,
Ninth Circuit.

Dec. 30, 1977.

Mary C. Dunlap (argued), San Francisco, Cal., for plaintiff-appellant.

Maurice Hamilton, City Atty. (argued), San Mateo, Cal., for defendants-appellees.

Before MERRILL and WRIGHT, Circuit Judges, and JAMESON,* District Judge.

MERRILL, Circuit Judge:

Appellant, in 1975, was the only woman police officer in the San Mateo, California, police department, and the first in the department's history to serve equally with men on patrol duty. In April, 1975, she learned that she was pregnant. She advised the department of her pregnancy and was referred to the city doctor for examination. He found her to be three to four months pregnant, in excellent health and capable of performing "light duties" until late October or early November. He nevertheless recommended that she be relieved of her obligations as a sworn officer because such officers must be capable of responding to police emergencies. Appellant was forthwith relieved of all police duties and required to go on sick leave. She appealed that decision to the San Mateo Personnel Board, which denied the appeal after a brief hearing. Appellant promptly filed charges with the California Fair Employment Practices Commission and thereafter with the Equal Employment Opportunity Commission, and received a right-to-sue letter as provided in 42 U.S.C. § 2000e–5(f). Appellant then commenced this action, seeking reinstatement and back pay.

Two claims were asserted in her complaint: (1) That by relieving her of her duties solely because of pregnancy, the city

---

* Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

had discriminated against her on the basis of sex, in violation of Title VII of the 1964 Civil Rights Act as amended, 42 U.S.C. §§ 2000e, *et seq.* (2) That in burdening her right to bear a child the city had violated the due process clause of the United States Constitution. The district court, following trial, rendered judgment for respondents. This court has jurisdiction under 42 U.S.C. § 2000e–5(j) and 28 U.S.C. § 1291.

## TITLE SEVEN CLAIM

■ In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court dealt with the burden of proof in a Title VII action. It held that the plaintiff must carry the initial burden of establishing a prima facie case of discrimination. Once that has been done, the burden shifts to the employer to prove that he had a "legitimate nondiscriminatory reason for the employee's rejection." 411 U.S. at 802, 93 S.Ct. at 1824. This does not end the inquiry, however. Reliance by an employer on a seemingly legitimate business policy to justify his treatment of an employee must be rejected when shown to be merely a cover-up for discrimination. 411 U.S. at 804, 93 S.Ct. 1817. Thus, even if the employer meets the burden of showing a legitimate nondiscriminatory reason for rejection of the employee, the plaintiff must then have the opportunity to show that the employer's reason was merely a pretext or was discriminatorily applied. In this last respect the burden of proof again shifts to the plaintiff.

The question here presented is whether the decision of the district court gave due regard to the requirements of *McDonnell Douglas.* Appellant does not dispute the fact that her pregnancy disqualified her from regular police patrol duties. She contends, however, that this was no reason for placing her upon sick leave, since she was still qualified for light police work. The question, then, is whether failure to place her upon modified light duty operated as a discrimination against her on the basis of sex.

1. *Prima Facie Case; Appellant's Initial Burden*

Appellant presented evidence to the effect that in approximately sixteen instances during the past few years, male officers suffering temporary disabilities (e. g., broken leg, broken arm, cast on right hand, back injury), had been granted light duty assignments, frequently office duty—a regular police duty which usually rotated among patrol officers but was also at times made available for disabled patrol officers.

■ To show discrimination against her personally, appellant also presented evidence that the city doctor had recommended her removal as a sworn officer only because the department had, on the day he examined appellant, informed him of its requirement that all sworn officers, regardless of assignment, must be able at all times to respond to emergencies involving possible physical confrontation. The evidence indicates that the doctor had never before been told of such a requirement and had not previously applied that standard in examining and making recommendations regarding male officers. In this respect the city admitted that the doctor had not been informed of this requirement until the day he had examined appellant, May 23, 1975. A prima facie case of discrimination can be made by showing disability due to pregnancy, action based on that disability which adversely affects employment opportunities and that others were not similarly treated when suffering temporary disabilities. *See, e. g., Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *Holthaus v. Compton & Sons, Inc.,* 514 F.2d 651 (8th Cir. 1975).

We assume, arguendo, that appellant, by her showing, met her initial burden of establishing a prima facie case of discriminatory treatment.

2. *Legitimate Nondiscriminatory Reason for Rejection; The City's Burden*

■ As justification for denial of light duty to appellant, the city introduced City Manager Directive No. 7 (CMD–7), promulgated by the city manager on February 22, 1974, which reads in part as follows:

"City Departments must provide the best possible service to the citizens of San Mateo. To do this all employees must be physically fit to perform full duty. To safeguard the health of its employees and to insure maximum service to the citizens, no employee on sick leave or disability leave (Workmen's Compensation leave) is to be assigned modified or limited work, even if authorized by the treating physician.

Upon request, the City Manager may permit an employe to perform at less than full duty for a particular project." (Clerk's Record 190).

As to this directive, the city manager stated:

"Prior to CMD # 7, the department heads of the various city departments had been delegated the responsibility for determining whether modified duty was appropriate. I wanted to centralize the decision-making authority in the City Manager to establish a uniform policy based upon the broad administrative responsibility that I was required to have as City Manager. Moreover, it was my strong intention to provide to the citizens of San Mateo the best available services at the most reasonable costs by requiring full duties for full pay.

I also recognized that, under special circumstances, it might be appropriate to assign modified duty to individuals who were temporarily disabled and yet who were still capable both from a physical and experience standpoint, of doing, at a particular time, specialized projects which were of great importance and benefit to the City. I provided in CMD # 7 for modified duty only upon my approval and then only upon justification. I did not intend to establish a policy that would permit modified duty simply because an employee might desire it. Nor was modified duty to be allowed where a department had to re-arrange its normal assignments 'to make work' for a particular individual. Nor was it to be permitted where an artificial project had to be created, which was not of high priority and for which the disabled individual was not experienced. At no time did I intend to create a new merit system position for modified duty personnel.

In short, modified duty was to be discouraged and granted only upon special circumstances and with adequate justification for a special purpose." (Affidavit of John C. Lilly, City Manager, Clerk's Record, 123).

The city manager's refusal to place appellant on modified light duty was in accordance with this directive. In our judgment this provided the city with a legitimate nondiscriminatory reason for its action, and its burden in this respect was met. *See McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802–04, 93 S.Ct. 1817; *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108, 158 (1975).

### 3. *Discriminatory Application of CMD–7; Appellant's Ultimate Burden*

Appellant contends that although CMD–7 on its face appears to be neutral, in fact it was discriminatorily applied. Only in her case, she points out, was the city doctor advised by the police department that sworn officers could not qualify for light duty unless they were physically able to perform full duty. She notes that some male officers did receive light-duty assignment after CMD–7 was promulgated; others were offered light duty by the chief of police. The only officers recommended by the department for special projects were males. Appellant concludes that her treatment by the department demonstrates a department attitude antagonistic towards female officers.

It is not the attitude or conduct of the police department that necessarily determines the outcome here, however. Under CMD–7 only the city manager is authorized to grant modified duty to any city employee, including a police officer, and it is his conduct in enforcing CMD–7 that must be examined. Appellant has the burden of showing that the directive was not enforced against male officers in the same strict manner that it was enforced against her by the city manager.

The question whether light modified duty should be assigned to police officers has not arisen frequently enough since CMD–7 became effective on February 22, 1974, to enable one to speak with assurance on this question. Appellant offered evidence that light duty was assigned to male officers by the city manager on four occasions after CMD–7 went into effect. Two of these (Officers Sheehan and Hourcaillou) involved special projects approved by the city manager in a manner consistent with CMD–7. One involved an officer (Viri), not known by the police captain or city manager to be disabled, and who either was capable of performing full duty or was assigned light office duty without the knowledge of the city manager. Only one assignment appears to have been contrary to the terms of the directive: a grant of light office duty to a disabled officer (Sibille) after a rumor spread through the police department that the officer had been seen duck hunting while on disability leave and thus might not be disabled at all.

As against this single instance in which the directive was apparently disregarded, we find light duty denied to male officers on two occasions—once by the police chief (Officer Carson), and once by the city manager (Officer Mackey). On two other occasions light duty was not served or approved by the city manager, although it was offered to officers (Culmer and Nielsen) by the police department. The reason for this does not clearly appear but could have been because light duty was not desired by the officers to whom it was offered.

In our judgment, on this record, appellant has not met her burden of showing that the directive amounted to pretext. While on one occasion under unusual circumstances the directive appears to have been disregarded, on five others (including appellant's case) it would seem to have been strictly followed: light duty denied in three cases, granted in connection with special projects in two cases. Appellant has made no attempt to show that she was discriminated against in that no special project was made available to her. It would appear that she was not singled out for denial of project eligibility, since the evidence shows that in the cases of two males, no project was provided.

The fact that the police department may have been willing to offer or recommend light duty to some disabled male officers does not help appellant, because only the city manager has the ultimate authority to approve modified duty and the evidence indicates that the city manager enforced the directive according to its terms. Although the action of the department may be questionable, the fact that only in appellant's case was the city doctor instructed by the police department to proceed in accordance with the directive does not assist appellant. The directive provides, "no employee * * * is to be assigned modified or limited work, *even if authorized by the treating physician.*" (emphasis added)

Based on the limited evidence appellant presented at trial, the findings of fact of the district court were not clearly erroneous, and we conclude that the district court did not err in holding that appellant had failed to meet her burden of proving that the city, in failing to assign her light duty instead of placing her on sick leave, had discriminated against her on the basis of sex in violation of Title VII.

## CONSTITUTIONAL CLAIM

Appellant contends that by requiring her to take an unpaid maternity leave after the third month of pregnancy, when less onerous alternatives were available, the city has violated the due process clause of the United States Constitution. In this respect appellant relies on *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). The Court there struck down a rule of the Board of Education requiring a pregnant school teacher to take unpaid maternity leave five months before the expected childbirth. The Court held that the rule violated due process by creating a conclusive presumption that every teacher who is four or five months pregnant is physically incapable of continuing her duties, whereas "the ability of any

particular pregnant woman to continue at work past any fixed time in her pregnancy is very much an individual matter." 414 U.S. at 645, 94 S.Ct. at 799. The regulations, the Court held, "cannot pass muster under the Due Process Clause of the Fourteenth Amendment, because they employ irrebuttable presumptions that unduly penalize a female teacher for deciding to bear a child." Id. at 648, 94 S.Ct. at 800.

We have no such irrebuttable presumption here. The record shows that the city did not have any per se rule respecting pregnancy as a disability. The question of disability was handled in each case depending on the doctor's examination and the employee's ability to continue performing the duties of her particular position. In one case the employee worked until the day before giving birth. Female police employees were treated in the same manner as other city employees. *This individual approach to maternity leave is quite unlike the rigid mandatory leave policy condemned in *LaFleur.*

In any event, unlike the school teachers in *LaFleur,* appellant does not contend that she was capable of performing her regular duties as a sworn officer while pregnant. She is not seeking a more individualized approach to the determination of fitness but rather seeks to impose a duty on her employer to find her alternative duties which she is capable of performing while pregnant. Due process does not require the city to provide alternative employment for its employees when disabled. It simply precludes the city from depriving pregnant women of the employment theretofore enjoyed on the basis of an irrebuttable presumption as to working capacity.

TRIAL DE NOVO

Appellant also appeals from the alternative holding of the district court wherein it was stated that appellant did not have a right to a trial de novo and that the court should merely review the administrative determination made by the city personnel board. After the decision below, the disagreement on this issue was resolved by the Supreme Court, which held that private and state, federal and local government employees all share the same right to trial de novo under Title VII. *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

Although the holding of the district court was erroneous, it was merely an alternative holding made after the case was fully submitted and after appellant had already exercised her right to trial de novo in submitting her case to the court.

Judgment affirmed.