Betty PERUGINI, Plaintiff–Appellant,

v.

SAFEWAY STORES, INC., United Food and Commercial Workers International Union Local 916; Gary Granskog; Frank Neth; Donald Weinrick and Peter Mumford, Defendants–Appellees.

No. 89–15425.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1990.

Decided June 17, 1991.

Joseph Klobas, Santa Barbara, Cal., for plaintiff-appellant.

Henry Lederman, Littler, Mendelson, Fastiff and Tichy, Walnut Creek, Cal., J. Thomas Bowen, Andrew J. Kahn, Davis, Cowell & Bowe, San Francisco, Cal., for defendants-appellees.

Before GOODWIN, SCHROEDER and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Appellant Betty Perugini appeals the district court's summary judgment in favor of Safeway Stores, Inc. and some of its supervisory employees (collectively "Safeway") and the United Food & Commercial Workers International Union, Local 916 and certain of its supervisory personnel (collectively "the Union"). Perugini filed a complaint in district court alleging that Safeway and the Union violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1988), and committed state-law torts of negligent and intentional infliction of emotional distress. In addition, she alleged that the Union breached its duty of fair representation. All defendants moved for partial summary judgment or judgment on the pleadings as to the causes of action alleging infliction of emotional distress, contending that these causes of action are preempted by section 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988). The Union defendants moved for summary judgment on the fair representation claim.

The district court granted the defendants' motions for summary judgment. In addition, the court granted summary judgment *sua sponte* for defendants on Perugini's Title VII action and dismissed the case with prejudice. Perugini appeals each of

these rulings. We reverse in part, affirm in part, and remand.

## FACTUAL BACKGROUND

Perugini was employed as a general merchandise clerk by Safeway under a collective-bargaining agreement ("CBA") negotiated by the Union. Her job involved, among other things, cleaning and buffing floors with heavy machines. On January 18, 1988, Perugini experienced abdominal discomfort associated with her pregnancy, then in its 16th week. The following day, on the advice of her physician, Perugini asked her supervisor, defendant Gary Granskog, to reassign her lighter work for the balance of her pregnancy. During their exchange, Granskog asked: "What is the bad news?" In response to Perugini's answer that there was no bad news, Granskog remarked: "There sure would be bad news if my wife was pregnant." Granskog refused to relieve Perugini of her normal duties until he received a letter from her physician. Consequently, Perugini worked that day on the heavy machines.

Perugini was next scheduled to work on January 21, 1988. On that day, she presented a letter from her physician describing her condition to the manager in charge. He refused to accept the letter, instructing her to give it to Granskog who was off work that day. The manager asked Perugini when she was going to go on disability. The manager then directed Perugini to work on the buffing machines and, in addition to her regular duties, assigned Perugini to scrub the back room, a more difficult job.

Perugini presented the letter to Granskog the following day. Nevertheless, he refused to take her off the heavy machines, stating that he did not understand the doctor's letter. Perugini's physician called Granskog later that day and told him that Perugini could not lift over ten pounds, but that she could perform lighter work during her pregnancy. Following this conversation, Granskog informed Perugini that she could no longer perform her job. Without other options, Perugini went on disability leave.

Shortly thereafter, Perugini contacted defendant Don Weinrich, her union representative, seeking assistance in this matter. Weinrich informed Perugini that he could not help her because Safeway's refusal to offer her light duty was not covered in the CBA. Her further requests for assistance during the following month from Weinrich and defendant Frank Neth, the president of the Union's local chapter, met with the same response. At one point a Union representative told Perugini that she could blame her problems on women's lib. Perugini then retained counsel who prevailed upon the Union to request that Safeway place Perugini on light duty. Following a series of meetings among the parties, Safeway permitted Perugini to return to work. Before her return, however, Perugini entered the hospital with pregnancy complications. Three weeks later, she lost her child.

Perugini did not return to work immediately. After a few months, Safeway demanded that Perugini provide them with a doctor's note confirming her inability to work as a condition for her continued absence from work. Perugini sought to be placed on medical leave of absence rather than being discharged for failing to appear for work. Safeway denied this request and terminated Perugini's employment. The Union filed a grievance and is currently arbitrating the medical leave issue. In September 1988, Perugini filed her complaint in this action.

## STANDARD OF REVIEW

We review *de novo* a grant of summary judgment. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339 (9th Cir.1989). Viewing the evidence in the light most favorable to Perugini, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* at 1339–40.

## DISCUSSION

A. The Title VII Action

 The district court's sole stated basis for granting summary judgment for the

Union and Safeway on Perugini's Title VII action was that the action had become the subject of a grievance and arbitration in another forum. The prior submission of the claim to arbitration is not an appropriate ground for dismissal. The Supreme Court has held that an employee's statutory right to trial *de novo* under Title VII is not foreclosed by prior submission of her claim to final arbitration under a collective-bargaining agreement. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The district court erred in granting summary judgment on this basis.

 The defendants argue, however, that there are other proper grounds for affirming the dismissal. They contend, for instance, that Perugini's pleadings fail to state a Title VII claim because they do not allege that she was treated differently from others similarly situated. *See Roller v. City of San Mateo,* 572 F.2d 1311, 1313 (9th Cir.1977). We recognize that we may sustain the dismissal for reasons not addressed by the court below. *See Marino v. Vasquez,* 812 F.2d 499, 508 (9th Cir.1987). Thus, if the result below is correct, we may affirm even if the district court relied on an erroneous ground. *See Lowe v. City of Monrovia,* 775 F.2d 998, 1007 (9th Cir. 1985), *amended on other grounds by* 784 F.2d 1407 (1986). However, we ascertain no basis for affirming the dismissal.

There are two reasons why we cannot accept the contention that the summary judgment on the Title VII claim should be affirmed on the ground that Perugini failed properly to allege differential treatment. The first is that the complaint does allege that Perugini was the object of discrimination solely because she is a female. That allegation may be liberally construed as an assertion that Perugini was treated differently from others similarly situated. The second reason is that the defendants' argument amounts to one that Perugini failed

to state a Title VII claim. If the defendants had brought a motion to dismiss on that ground, and had won a dismissal by establishing that the complaint could not be so liberally construed, Perugini could have requested leave to amend her complaint. Fed.R.Civ.P. 15(a). We will not deprive her of that opportunity simply because the deficiency in the complaint is first asserted on appeal in support of a summary judgment granted on another ground.

Consequently, we reverse the district court's summary judgment in favor of all defendants on Perugini's Title VII claim.

**B. The Duty of Fair Representation**

 Perugini alleges that the Union breached its duty of fair representation by failing immediately to challenge Safeway's refusal to give her light duty during her pregnancy.[1] The district court granted summary judgment in favor of the Union because it viewed Perugini's claim as one based purely on sex discrimination, and the collective bargaining agreement did not forbid sex discrimination. Fairly construed, however, Perugini's claim was not that narrow; she alleged generally that the Union acted arbitrarily in failing to protect her employment, as well as alleging that the Union was compounding Safeway's sex discrimination.

 The duty of fair representation arises from the terms of the collective agreement between the parties. *See International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 51, 99 S.Ct. 2121, 2127, 60 L.Ed.2d 698 (1979); *Vaca v. Sipes,* 386 U.S. 171, 191–94, 87 S.Ct. 903, 917–19, 17 L.Ed.2d 842 (1967); *Archer v. Airline Pilots Ass'n Int'l,* 609 F.2d 934, 938–39 (9th Cir.1979), *cert. denied,* 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980). The Union contends that the CBA does not require Safeway to provide light duty for disabled employees, and that it therefore

---

1. In outlining the duty of fair representation claim, Perugini's complaint refers to two separate situations: 1) the Union's failure adequately to represent Perugini before she lost her child; and 2) Perugini's unsuccessful attempt following her pregnancy to be placed on medi-

cal leave of absence. However, the Union represented Perugini in her attempt to be placed on medical leave. Therefore, Perugini now bases her duty of fair representation action only on the alleged inadequacy of the Union's assistance during her pregnancy.

had no basis for seeking redress for Safeway's refusal to reassign Perugini. The CBA does provide, however, that "[a]ny employee whose earning capacity is limited because of a physical or mental handicap, or other infirmity, may be employed on suitable work at a wage agreeable to the Employer, employee and Union." CBA, § 9.5. Perugini showed that she informed the Union that her job was threatened because of the failure of Safeway to assign her to light work. Regardless of Safeway's possible motivation for treating Perugini as it did, the threat to Perugini's job and the Union's failure to act raises a triable issue of the Union's breach of the duty of fair representation. *See Vaca v. Sipes,* 386 U.S. at 194, 87 S.Ct. at 918 (if Union had failed to pursue grievance when employee seeking light work presented medical evidence, duty of fair representation might well have been breached). It was error, therefore, to grant summary judgment against Perugini on the fair representation claim on the ground that the CBA did not cover sex discrimination.

Perugini may also be able to prevail on her duty of fair representation claim if she can demonstrate that the Union failed to represent her when they would have represented a temporarily-disabled male. *See* 5 U.S.C. § 7114(a)(1)(1988). Perugini's complaint does allege that the Union acted in a discriminatory manner by failing to protect her employment with Safeway because of her sex. That allegation is sufficient to inject a sex discrimination issue into her claim for breach of the duty of fair representation.

### C. Preemption of the Emotional Distress Claims

■ Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a)(1988). A suit for breach of a collective-bargaining agreement is governed exclusively by federal law under section 301. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). Consequently, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). Thus, Perugini's emotional distress claims are preempted if they can be resolved only by referring to the terms of the CBA. *See Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1146–47 (9th Cir.1988).[2]

Under California law:

[t]he elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Cervantez v. J.C. Penney Co.,* 24 Cal.3d 579, 593, 595 P.2d 975, 983, 156 Cal.Rptr. 198, 206 (1979). To be outrageous, conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.*

■ Safeway asserts that Perugini's emotional distress claims are based on Safeway's refusal to honor Perugini's request for light duty. Since Safeway's duty to reassign temporarily disabled employees

2. Perugini suggests that the district court was inconsistent in ruling that the conduct alleged in this action was outside the terms of the CBA for purposes of establishing a duty of fair representation, but that the state claims based on the same conduct were preempted because they could be decided only by reference to the CBA. This argument misconstrues the law of preemption. The relevant inquiry in determining pre-emption is not whether the challenged action is specifically covered by the CBA, but whether the court must interpret the labor agreement in ruling on the claim. *See Lingle,* 486 U.S. at 413, 108 S.Ct. at 1885. If the court must interpret the agreement to make its decision, the claim is preempted, regardless of whether the action is actually found to be covered under the agreement. *See Newberry,* 854 F.2d at 1146–47.

to lighter work cannot be determined without reference to the CBA, Safeway argues that Perugini's emotional distress claims are preempted by section 301(a) of the LMRA. We disagree with Safeway's characterization of Perugini's claim.

Clearly, Perugini's emotional distress claim against Safeway is based in part on its refusal to honor her request for light work; however, Perugini also complains that Safeway harassed her at her job because she was female and pregnant. Perugini's complaint details a course of discriminatory conduct by Safeway unrelated to her request for light work. The allegations against Safeway include harassing and discriminatory remarks by Safeway employees, refusal to accept letters from her doctor, and assignment of extra, more difficult work. Specifically, upon learning of her pregnancy, Perugini's supervisor's remark about her pregnancy being "bad news," and the assistant manager's questions regarding when she was going to take disability leave, demonstrate conduct independent of any response to Perugini's request for light work. Thus, Perugini's emotional distress claim against Safeway must fairly be considered in two segments for purposes of preemption. We must address claims for: (1) emotional distress caused by Safeway's refusal to assign Perugini light work, and (2) emotional distress caused by Safeway's on-the-job harassment of Perugini.

To the extent that Perugini's claim is based on Safeway's refusal to provide light duty, her claim is precluded by section 301(a). Safeway's handling of Perugini's request for light work was certainly no model for good labor-management relations. Nevertheless, if Safeway's managerial freedom is not constrained in any material way by the CBA, a rational jury could not find that Safeway's conduct in discharging Perugini from heavy work instead of reassigning her to light work was an action "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez*, 24 Cal.3d at 593, 595 P.2d at 983, 156 Cal.Rptr. at 206. We therefore must look to the CBA to judge the appropriateness of Safeway's behavior

in regard to this allegation. No provision of the CBA specifically addresses light duty, but several provisions relate to the allegations in this case: Section 2.4.2 (discrimination in termination on the basis of sex); Section 3.3 (procedures for discharge); Section 5.14 (medical leave of absence); Section 9.5 (employment of workers with disabilities); and Section 18 (grievance and arbitration). We can determine whether Safeway was acting consistently with its duties under the CBA in refusing to reassign Perugini only by interpreting these provisions. Under *Lingle*, the district court properly ruled that the state claim against Safeway based on its failure to reassign Perugini is preempted.

█ In contrast, to the extent that Perugini's claims are based on allegations that Safeway's conduct and remarks constituted on-the-job harassment, reference to the CBA is not required to determine whether Safeway's conduct exceeded all bounds usually tolerated in a civilized community. The CBA does not govern the offending behavior. The resolution of these claims depends on a purely factual inquiry into the conduct and motivation of the employer. This case is similar to *Tellez v. Pacific Gas & Electric Co., Inc.*, 817 F.2d 536 (9th Cir.), *cert. denied*, 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). In *Tellez*, the plaintiff brought a claim for intentional infliction of emotional distress after his employer published a suspension letter charging him with purchasing drugs on the job. We held that this claim was not preempted because the CBA did not envision outrageous behavior of that type nor did it require or regulate suspension letters. *See id.* at 536–37, 539.

Here the CBA does not refer to on-the-job discriminatory and harassing conduct by management towards its employees. The only provision in the CBA relating to sexual discrimination is limited to discrimination in regard to hire and termination. *See* Section 2.4.2 (sex shall not be "a basis for rejection or termination of an otherwise qualified employee and applicant for employment"). Thus, under *Lingle*, Perugini's emotional distress claims based on

Safeway's alleged harassment are not preempted by section 301(a). *See Galvez v. Kuhn,* 933 F.2d 773, 774, 778–80 (9th Cir. 1991); *Miller v. AT & T Network Systems,* 850 F.2d 543, 550 n. 5 (9th Cir.1988).

■ The Union argues that Perugini's emotional distress claim against the Union is preempted by section 301 because the court must refer to the CBA to determine whether the Union failed to represent Perugini adequately as she sought light duty. Again, this argument is persuasive only to the extent that Perugini's claim is based on an allegation that the Union violated the CBA. As we discussed earlier, we do not believe this is an accurate characterization of Perugini's claim. In her complaint, Perugini detailed discriminatory remarks and conduct made by Union officials.

In reviewing whether the Union was obligated to represent Perugini and to pursue her claims, the court would necessarily refer to the Union's duties to Perugini as stated in the CBA. To the extent that Perugini's claims are based on the Union's failure to represent her, section 301 preempts her claims. Whether the Union's conduct in this regard was outrageous depends upon whether that conduct was appropriate under the circumstances. "Because the tort requires inquiry into the appropriateness of the defendant's behavior, the terms of the CBA can become relevant in evaluating whether the defendant's behavior was reasonable." *Miller,* 850 F.2d at 550. The Union's failure to seek light duty for Perugini is not outrageous if the Union has no duty under the CBA to represent her in this matter. Consequently, regardless of whether the CBA actually obligates the Union to represent Perugini in her attempt to be assigned light duty, the appropriateness of the Union's conduct can be determined only by interpreting the CBA. Thus, the district court properly found that the intentional inflic-

tion of emotional distress claim against the Union is preempted by section 301 to the extent that the claim is based on the Union's failure to represent Perugini.

■ In contrast, the CBA does not set forth standards to determine whether the Union acted outrageously in making discriminatory remarks to Perugini. Accordingly, Perugini's claim is not preempted to the extent that it is based on the Union's alleged harassment.

■ For the evaluation of claims of negligent infliction of emotional distress under California law, the relevant inquiry is whether the risk of harm to the plaintiff from the negligent act of the defendant was reasonably foreseeable; if so, the defendant owes that plaintiff a duty to exercise due care. *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 923, 616 P.2d 813, 816–17, 167 Cal.Rptr. 831, 834–35 (1980). The provisions of the CBA are not relevant to the question whether the harm caused to Perugini by the defendants' harassment was foreseeable, because the CBA did not set forth standards governing on-the-job harassment and discriminatory conduct. However, the provisions of the CBA are relevant to the question whether the harm to Perugini caused by the defendants' failure to assign light work was foreseeable. Since Perugini had no explicit right to light duty under the CBA, it was not reasonably foreseeable that she would suffer emotional distress from being denied light duty by Safeway[3] or from the Union's delay in representing her in this matter. To the extent that resolution of the negligent infliction of emotional distress claims requires interpretation of the CBA, these claims are preempted by section 301. The district court incorrectly dismissed all of Perugini's state law claims against the defendants.[4]

---

**3.** Emotional distress from the discharge itself is to be differentiated from emotional distress caused by the failure to reassign to light duty. Discharge is clearly regulated by the CBA, and emotional distress claims arising from the discharge are preempted for that reason. *See Newberry,* 854 F.2d at 1149–50.

**4.** Safeway also urges that Perugini's state law claims are preempted by California's workers' compensation law. Safeway made this argument before the district court, but the court did not reach the issue. We remand this issue to the district court for its consideration.

## CONCLUSION

For the reasons stated above, we reverse the summary judgment for Safeway and the Union on all of Perugini's claims, and remand for further proceedings consistent with this opinion. Perugini is entitled to her costs on this appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.