UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1628
_____


RICHARD BAKER,

Plaintiff-Appellant,
Cross-Appellee,

versus

FARMERS ELECTRIC COOPERATIVE, INC.
and LAWSON WHITE,

Defendants-Appellees,
Cross-Appellants.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

(September 23, 1994)

Before REAVLEY and GARWOOD, Circuit Judges, and LAKE[*], District
Judge.

GARWOOD, Circuit Judge:

Plaintiff-appellant Richard Baker (Baker) brought a state
court action in Hunt County, Texas, against his employer, Farmers
Electric Cooperative, Inc. (Farmers), and Lawson White (White),
individually and as manager of Farmers, alleging intentional
infliction of emotional distress arising from a job reassignment.
Defendants removed the suit to the United States District Court for

---

[*]    District Judge of the Southern District of Texas, sitting by
designation.

the Northern District of Texas on the ground that federal labor law preempted the state law claim because resolution of the action required the interpretation of a collective bargaining agreement (CBA). The district court denied Baker's motion to remand and dismissed the action without prejudice for Baker's failure to exhaust contractual grievance procedures. Baker appeals from this order; defendants cross-appeal, asserting that the dismissal should have been with prejudice.

## Facts and Proceedings Below

Baker is an employee of Farmers and a member of the International Brotherhood of Electrical Workers, Local Union No. 59 (the Union). When the events underlying this lawsuit occurred, Baker was a member of the Union and he was a Farmers' employee covered by a CBA between Farmers and the Union; at Farmers, he was a journeyman lineman and had held that position for fourteen years. In early 1992, White, the general manager of Farmers, assigned to Baker the duties of a custodian/yardman.[1] Baker's duties as a custodian/yardman include sweeping the warehouse and driveway, mowing the yard, and cleaning the bathrooms and breakrooms. He contends that these duties are demeaning and cause him physical and emotional distress.

Baker alleges in his state court petition that he was reclassified to the maintenance position in retaliation for

---

[1] A collective bargaining agreement, which was negotiated between Farmers and the Union for 1992 and 1993 and became effective in May 1992, shortly after the state lawsuit was filed, expressly reclassified Baker as a custodian/yardman at a salary of $7.64 per hour. As a journeyman lineman, he had earned $16.35 per hour.

participating in an arbitration against Farmers; that arbitration is unrelated to this matter. Following the completion of the arbitration, defendants informed him that he could no longer drive a company truck. According to Baker, driving a truck was not a condition of employment as a journeyman lineman.[2] He claims that the defendants are intentionally trying to force him to resign by making his work environment unpleasant. Baker has filed an unfair labor practice charge against Farmers with the National Labor Relations Board.

Defendants claim that Farmers acted within its legal rights in reassigning Baker, under the terms of the CBA which was in effect from 1990 to 1992.

On May 8, 1992, Baker filed this action in state court in Hunt County, Texas, against Farmers and White, individually and as manager of Farmers, claiming damages for intentional infliction of emotional distress. Defendants timely removed the action to the United States District Court for the Northern District of Texas. As grounds for removal, defendants claimed that resolution of

---

[2] Defendants explain that in early 1992, Farmers' insurance carrier notified them that Baker was uninsurable due to his poor driving record. The 1990-1992 CBA assigned Baker, as a journeyman lineman, various "on call" duties, such as responding to electrical service disruptions, downed power lines, and other emergencies; employees who were "on call" were permitted to use Farmers' trucks. Farmers would not allow Baker to drive its trucks after he became uninsured and asserts that therefore Baker was no longer qualified to perform all of the duties of a journeyman lineman.

The 1992-1993 CBA added a provision allowing the termination of employees who failed to meet the requirements of Farmers' fleet insurance policy. Because Baker was "grandfathered" out of the termination provision, he was permanently reassigned to a lower paying job rather than being terminated.

Baker's state tort claim required interpretation of the CBA and thus the case involved a federal question arising under the National Labor Relations Act (NLRA), 29 U.S.C. § 141, *et seq*., and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, *et seq.*

On June 11, 1992, Baker moved to remand the action to state court. Defendants responded. On June 30, 1992, the district court entered an order denying the motion to remand and dismissing the action without prejudice. The court determined that resolution of the dispute depended on Baker's ability to establish either that his reassignment violated the terms of the CBA which governed matters of his employment at Farmers or that the CBA was invalid. The court concluded that the NLRA and the LMRA preempted Baker's state tort claim and denied his motion to remand.

Upon finding that Baker had failed to exhaust the remedies set forth in Article 29 of the CBA which required resolution of disputes arising from the CBA through grievance or arbitration proceedings, the district court dismissed the action without prejudice to allow Baker to comply with this requirement.

**Discussion**

I.  Denial of Motion to Remand

*A.  Claims against Farmers*

Preemption is a question of law reviewed *de novo*. *Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir. 1991).

Where removal jurisdiction is predicated on the existence of a federal question, the federal question generally must appear on the face of the plaintiff's complaint. *Caterpillar, Inc. v. Williams*, 107 S.Ct. 2425, 2429 (1987). The removing defendant's

4

interjection of a federal defense is normally insufficient to remove the case. *Id*. at 2430. One exception to this rule, however, occurs where an area of state law has been completely preempted by federal law. *Id*. Controversies involving collective bargaining agreements, where section 301 of the LMRA, 29 U.S.C. § 185(a), provides the grounds for preemption, constitute such an area of preemption.[3] *Id*. at 2430-31; *Lingle v. Norge Div. of Magic Chef, Inc.*, 108 S.Ct. 1877 (1988).

Defendants removed this action to federal court on the grounds that resolution of Baker's intentional infliction of emotional distress claim required interpretation of the CBA. This claim implicates preemption under section 301 of the LMRA, which vests jurisdiction in the federal courts to hear claims for violation of labor contracts.[4]

---

[3] It has been said that if issues involving section 301 arise only as a defense, there is no preemption. "[A] defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990). Here, defendants assert that, in order to meet his burden of proof on the state intentional infliction of emotional distress claim, Baker must rely on the CBA to establish that their actions in reassigning him to the maintenance position were extreme and outrageous; thus their dependence on the CBA for removal purposes is not purely defensive.

[4] Other grounds for preemption by federal labor laws exist. In *Farmer v. United Brotherhood of Carpenters and Joiners*, 97 S.Ct. 1056 (1977), the Supreme Court discussed the general rule governing preemption in the labor law area. This rule removes from state regulation activities which are protected by section 7 of the NLRA, or which constitute an unfair labor practice under section 8. *Farmer*, 97 S.Ct. at 1061 (quoting *San Diego Bldg. Trades Council v. Garmon*, 79 S.Ct. 773, 779 (1959)). One exception to this rule, where preemption does not apply, occurs where the activity at issue is peripheral to the labor concerns. *Id*.

Baker argues that this case is governed by *Farmer*, which

> "Section 301 not only gives federal courts jurisdiction to hear employment cases covered by collective bargaining agreements, but also directs them to fashion a body of federal common law to resolve such disputes, and preempts any state law claims which require the interpretation of a collective bargaining agreement." *Jackson v. Kimel*, 992 F.2d 1318, 1325 (4th Cir. 1993) (internal citations omitted).

The purpose behind section 301 preemption is to ensure that issues raised in actions covered by section 301 are decided in accordance with the precepts of federal labor policy. *Allis-Chalmers Corp. v. Lueck*, 105 S.Ct. 1904, 1910 (1985) (quoting *Teamsters v. Lucas Flour Co.*, 82 S.Ct. 571, 576 (1962)).

In *Lueck*, the Supreme Court recognized that the coverage of section 301 extends beyond contract claims for breach of a labor agreement to include state tort claims which require analysis of a labor contract:

> "If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301

---

concerned a state law claim for intentional infliction of emotional distress based on allegations of discrimination in employment referrals, personal abuse, and harassment. The Court declined to preempt the state claim on the grounds that the tort issue could be adjudicated without resolution of an underlying labor dispute, and because the potential interference with federal concerns was insufficient to counterbalance the legitimate and substantial state interest in protecting its citizens. 97 S.Ct. at 1065.

Although *Farmer* noted the existence of section 301 preemption, it did not address that preemption in the context of the facts before it. *Id.* at 1062 n.8. We have interpreted *Farmer*'s stance on preemption of emotional distress claims narrowly. *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1256 (5th Cir. 1990) ("*Farmer* does not hold that claims for intentional infliction of emotional distress are never preempted by the federal labor laws, but rather that such claims may escape preemption when they relate only peripherally to federal concerns."). Even assuming that *Garmon* preemption as discussed in *Farmer* applies to section 301 cases, the case before us differs substantially from *Farmer* in that Baker's state tort claim cannot be adjudicated without reliance on the CBA.

> must extend beyond suits alleging contract violations. These policies require that `the relationships created by [a collective-bargaining] agreement' be defined by application of `an evolving federal common law grounded in national labor policy.' . . . Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Lueck*, 105 S.Ct. at 1911 (internal citations omitted).

A state tort claim is preempted by section 301 if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id*, at 1912.

The Court revisited the issue of preemption of state claims in *Lingle v. Norge Div. of Magic Chef, Inc.*, 108 S.Ct. 1877, 1885 (1988), holding that application of state law is preempted by section 301 only if such application requires the interpretation of a CBA. "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." *Id*. at 1881.

The *Lingle* Court found that preemption was not required on the facts before it. The plaintiff's allegations concerned retaliatory discharge, a claim requiring proof that (1) the plaintiff was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights. The Court decided that neither the elements of the plaintiff's case nor the defense of proving a nonretaliatory motive for discharge required the interpretation of

any term of a CBA, although some of the factual inquiries under the state claim might be similar to those under section 301:

> "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is `independent' of the agreement for § 301 pre-emption purposes." *Lingle*, 108 S.Ct. at 1883.

Thus the critical inquiry concerns the necessity of looking to the terms of a CBA to resolve the state law claim. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims `substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 107 S.Ct. at 2431 (quoting *Electrical Works v. Hechler*, 107 S.Ct. 2161, 2166-2167, n.3 (1987)).

Baker claims that his claims for intentional infliction of emotional distress are purely state law claims which are not preempted by federal labor law. He asserts that, as the CBA does not expressly address intentional torts, resolution of his claims does not require interpretation of the CBA.

For Baker to sustain his claim of intentional infliction of emotional distress under Texas law, he must prove that: (1) the defendants acted intentionally or recklessly; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' actions caused Baker emotional distress; and (4) Baker's emotional distress was severe. *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 942 (Tex. App.SQBeaumont 1985, writ ref'd n.r.e.) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

Baker does not allege that any action on the part of the

defendants other than his reassignment to a maintenance position has caused him mental distress. He alleges no instances of harassment, discrimination, physical abuse, or other conduct which would provide grounds for an emotional distress claim.

Baker must prove, as an element of his claim of intentional infliction of emotional distress, that the defendants' actions in reassigning him were extreme and outrageous. The terms of the CBA are relevant to this issue, because the CBA expressly grants management rights over the business of Farmers and its employees which could be interpreted to include the right to reassign an employee's duties.[5] Article Five of the CBA provides:

> "A. It is expressly agreed and understood that, except as otherwise provided in this Agreement and by law, the Cooperative [Farmers] retains the sole right to manage the affairs of the business and to direct the working forces thereof and shall have the exclusive right of selection, direction and determination of size of the work force . . . . The enumeration herein of management's rights shall not be deemed to exclude other functions not specifically set forth. The Cooperative, therefore, retains all rights, powers, prerogatives, and authorities not otherwise specifically abridged, delegated or modified by this Agreement. The Cooperative reserves the sole right to judge the skill and/or ability of any employee."

Because construction and understanding of the terms of the CBA, particularly those governing Farmers' rights to reassign its employees, are unavoidably and inextricably intertwined with resolution of the question whether defendants' conduct in reassigning Baker was extreme and outrageous, a necessary element

---

[5] Indeed, counsel for Baker conceded at oral argument of this matter that we must look to the CBA for resolution of the "extreme and outrageous" element of the state tort claim. He argued, however, that while relevant, the CBA was not determinative and thus the tort claim was not preempted.

of Baker's state law claim, the district court properly held that his state tort claim was preempted by section 301.

The propriety of the district court's action is revealed by examination of other cases involving a claim for intentional infliction of emotional distress, where the question of preemption turns on whether the conduct upon which the claim is grounded is governed by the CBA. If the agreement would not condone the activity, there is no preemption. If the conduct arises out of activities covered in the agreement, however, courts generally hold that the emotional distress claim is preempted.

In *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250 (5th Cir. 1990), we upheld a finding of preemption and affirmed summary judgment for Southwestern Bell (Bell) where the emotional distress claim turned on the circumstances under which Bell could or could not discharge an employee. The plaintiff, Brown, sued Bell, his employer, in state court for denial of disability benefits and subsequent discharge. Brown alleged, *inter alia*, that Bell intentionally caused him emotional distress when it forced him to choose between losing his job and returning to work, despite his claimed inability to work for medical reasons.

Bell removed the action on basis of jurisdiction under ERISA and the LMRA and moved for summary judgment. The district court denied Brown's motion to remand and entered summary judgment for Bell, concluding that the intentional infliction of emotional distress claim arose out of the denial of disability benefits and was therefore preempted by ERISA.

This Court, in addressing the intentional infliction of

emotional distress claim, did not reach the issue of ERISA preemption because it concluded that the claim directly implicated the concerns addressed by the LMRA. *Brown*, 901 F.2d at 1255. The Court reasoned that because Brown was essentially claiming that Bell could not fire him while he was absent from work for medical reasons, resolution of his claim would require interpretation of the CBA and was thus preempted by section 301 of the LMRA. *Id*. at 1255-1256.

Although the facts underlying Baker's claims differ slightly from those in *Brown*, at issue in each case is the authority of the employer, as set forth in a CBA, to take certain actions affecting the plaintiff's job. Because the terms of the CBA are relevant to the resolution of the state tort claim, section 301 preempts those state tort claims.

Similarly, in *Strachan v. Union Oil Co.*, 768 F.2d 703 (5th Cir. 1985), we affirmed the preemption of state tort claims arising from the suspension and drug testing of two employees who were later restored to full employment following negative testing results. We found preemption proper because the employer had the power under the CBA to require medical examinations when there was concern regarding the physical condition of its employees. *Id*. at 705. *See also Bagby v. General Motors Corp.*, 976 F.2d 919, 921-922 (5th Cir. 1992) (claim for intentional infliction of emotional distress allegedly caused by suspension and escort from factory were preempted because acts which were claimed to be tortious were "unquestionably taken in accordance with provisions of the CBA").

The Ninth Circuit has addressed preemption by section 301 of

11

claims of intentional infliction of emotional distress in a number of cases. In each of these cases, where the allegedly tortious conduct could not have been sanctioned by the CBA, for example in cases concerning assault and battery or sexual harassment, no preemption occurs. Where the conduct may reasonably be deemed covered by the CBA, however, as in assignment of duties or representation by a Union, section 301 does preempt state tort claims.

The case of *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083 (9th Cir. 1991), provides a good example of the distinction between conduct inside and conduct outside the scope of a CBA. In *Perugini*, the court affirmed the trial court's finding of preemption of emotional distress claims based on an employer's refusal to honor a pregnant employee's request for light duty and a union's failure to represent the employee, reasoning that the claims required interpretation of the CBA. In contrast, the court reversed the trial court's finding of preemption of the employee's emotional distress claims which were based on alleged discrimination and harassment of the employee by her employer and union, on the ground that these claims did not implicate the CBA.

Other circuits have recognized this same dichotomy. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir. 1990), concerned a wrongful discharge action. The plaintiff alleged harassment at work and also outside the workplace. She claimed to have suffered emotional distress, not as a result of her termination, but rather as a result of the harassment from her co-workers. The Sixth Circuit distinguished between conduct based on the CBA and conduct

12

outside the scope of the agreement.

> "Although state law claims for intentional infliction of emotional distress strictly based upon a defendant's exercise of CBA rights do not escape the preemptive force of section 301, such claims premised upon abusive behavior above and beyond the routine exercise of CBA rights are not preempted." *Id.*, 914 F.2d at 802 (internal citations omitted).

The court held that the emotional distress claim was not preempted because the allegations arose from abuse endured while the plaintiff was employed, and from conduct which was not authorized or even contemplated by the CBA, rather than from her termination.[6]

That the defendants' action may have been taken in retaliation for Baker's participation in the prior arbitration does not defeat

---

[6]   *See also Jackson v. Kimel*, 992 F.2d at 1325-1327 (intentional infliction of emotional distress claim arising from sexual harassment by co-worker not preempted because CBA could not lawfully authorize alleged behavior); *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531, 537 (4th Cir. 1991), *cert. denied*, 112 S.Ct. 912 (1992) (intentional infliction of emotional distress claim stemming from employer's disposal of contents of his locker preempted because resolution of claim would be substantially dependent on analysis of CBA); *Knafel v. Pepsi Cola Bottlers, Inc.*, 850 F.2d 1155, 1162 (6th Cir. 1988) (affirming summary judgment for employer on claim that conditions of employment were calculated to intentionally cause employee emotional distress because claim required analysis of CBA; plaintiff claimed actions taken by employer were in retaliation for participation in prior civil rights action); *Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 571-573 (7th Cir. 1989) (intentional infliction of emotional distress claim stemming from work assignments and denials of excused work preempted because claim required determination of whether employer's conduct was authorized by CBA); *Galvez v. Kuhn*, 933 F.2d 773 (9th Cir. 1991) (claims for intentional infliction of emotional distress based on assault and battery and racial slurs were not preempted by section 301); *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536 (9th Cir.), *cert. denied*, 108 S.Ct. 251 (1987) (claims for intentional infliction of emotional distress based on circulating to other employees letters concerning suspension of employee for allegedly purchasing drugs on the job were not preempted where CBA was silent on work conditions and vague on disciplinary formalities and did not regulate suspension letters).

section 301 preemption.  Cases in which intentional infliction of emotional distress claims are found to be preempted imply that the intent with which the alleged tort is performed is not a determinative factor in preemption analysis.  *See, e.g., Knafel v. Pepsi Cola Bottlers, Inc.*, 850 F.2d 1155, 1160-1162 (6th Cir. 1988) (finding preemption of emotional distress claim without discussing alleged retaliatory motive).

Indeed, the fact that Baker alleges retaliatory action as the motivation for his reassignment supports a finding of section 301 preemption.  The purpose of preempting claims based on a violation of a labor contract is to secure the development of a uniform body of federal labor policy.  This purpose is furthered when state torts alleged to have been committed in retaliation for exercising rights granted under a CBA, such as arbitration, are heard by a federal court applying federal labor law.  While such retaliation as Baker alleges is not itself a wrong under state tort law, it may constitute an unfair labor practice actionable under federal labor law.  Thus, even the question of the intent behind Baker's reassignment implicates questions of federal labor law and is related to the CBA and Baker's rights under CBA.

Because Baker's claim requires analysis of the CBA to determine whether the defendants' actions in reassigning him to the maintenance position were extreme and outrageous, a necessary element of his state law claim, his claims against Farmers are preempted by section 301.  The district court did not err in denying his motion to remand.

14

*B.    Claims against White*

Baker claims on appeal that the district court abused its discretion in not remanding the claims asserted against White individually and as manager of Farmers.  Because these claims arise out of the same facts and circumstances as those asserted against Farmers, however, removal of Baker's claims against White was appropriate under the district court's exercise of pendent jurisdiction.

The recently enacted 28 U.S.C. § 1367, which in many respects codifies the case law doctrine of pendent jurisdiction, provides that the district courts

> "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the original jurisdiction of the district court] that they form part of the same case or controversy under Article III of the United States Constitution."

This pendent jurisdiction may continue even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot.  *Hefner v. Alexander*, 779 F.2d 277, 281 (5th Cir. 1985).  Removal jurisdiction may properly be exercised over pendent state claims in the context of federal labor law.  *See Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641-642 (9th Cir. 1989) (district court had jurisdiction on removal to address state claims which could have been brought originally in the district court as pendent to claim for breach of collective bargaining agreement governed by section 301).

Baker has not asserted any claim against White or Farmers other than the emotional distress claim arising from his change in job assignment.  The only conduct at issue is White's reassignment

15

of Baker from journeyman lineman to custodian/yardman; Baker does not claim that White harassed, assaulted, or discriminated against him, nor does he argue that White's actions in reassigning him were outside the scope of White's authority as manager of Farmers. Baker's claims against White are essentially identical to his claim against Farmers and form part of the same case or controversy. The district court properly exercised its pendent jurisdiction in removing the claims against White.

In addition, we hold that removal of the claims asserted against White, individually and as manager of Farmers, was appropriate on the facts before us under the doctrine of section 301 preemption.

Baker sued White in both his individual and official capacities, but it is evident that Baker does not claim any personal motivation on the part of White in reassigning him to the maintenance position. The motivation alleged, that of retaliation for participating in the arbitration, is related to White's employment with Farmers. Likewise, the action claimed to be tortious, the actual reassignment, also stems from White's position as manager of Farmers. In sum, White's reassignment of Baker, the sole ground for Baker's tort claim, was a company action.

If a plaintiff were allowed to bypass preemption of his state claim against his employing company by asserting an identical claim against the company's chief executive, section 301's policy of developing a consistent body of federal labor law would be

eviscerated.[7]

In cases involving claims against fellow employees where the question of section 301 preemption has arisen, courts have governed their determinations on the preemption by the necessity of referring to a CBA for resolution of the claim rather than by the individual status of the defendant. In *Brown v. Southwestern Bell Tel. Co.*, we held that intentional infliction of emotional distress claims asserted against two supervisors were preempted because the claims were "'inextricably intertwined with the terms of . . . [a] labor contract.'" 901 F.2d at 1256 (quoting *Allis-Chalmers Corp. v. Lueck*, 105 S.Ct. at 1912). The fact that two of the defendants were individuals employed by Southwestern Bell was not a factor in our decision. *See also Knafel v. Pepsi Cola Bottlers, Inc.* 850 F.2d at 1160-1162 (affirming preemption of claims against defendants, including individual employees, on basis of CBA, without discussion of individual status); *Perugini v. Safeway Stores, Inc.* 935 F.2d at 1088-1089 (preemption discussion revolving around reference to CBA rather than status of defendants). *But see Jackson v. Kimel*, 992 F.2d at 1328-1329 (Phillips, J., concurring) (suggesting that claim against supervisor should not be preempted

---

[7]    By this we do not intend that all claims raised against a fellow employee or supervisor should be preempted; for example, claims arising out of conduct which is unrelated to the work environment or which involve actions not within the scope of employment or not in furtherance of the employer's business may still escape the reaches of section 301 preemption whether asserted against an employer or a fellow employee. *See Jackson v. Kimel*, 992 F.2d at 1325-1327 (emotional distress claim, based on alleged sexual harassment, asserted against fellow employee not preempted by section 301 on ground that interpretation of CBA not required to resolve tort claim).

17

because of his individual status).

Preemption of Baker's emotional distress claims against both Farmers and White leaves him with the alternative of pursuing the remedies available through the grievance procedures set forth in the CBA; Baker has already filed an unfair labor practice charge with the National Labor Relations Board.[8]  In these procedures, his potential remedies are against Farmers, not White.  As Baker does not allege that White did anything but act for the company, however, this result is not inappropriate.  A company can act only through the individuals it employs.  In situations where, as here, state tort claims against a fellow employee allege nothing but company action, allowing a plaintiff to pursue those claims in state court would destroy the protections provided by section 301.[9]

## II.  Dismissal Without Prejudice

This Court reviews the district court's order of dismissal *de novo*.  *Hickey v. Irving Indep. School Dist.*, 976 F.2d 980, 982 (5th Cir. 1992).

The district court recognized that Baker had failed to comply

---

[8]     This remedy was found adequate in *Int'l Union, United Mine Workers v. Covenant Coal Corp.*, 977 F.2d 895, 897-899 (4th Cir. 1992), where the Fourth Circuit held that section 301 barred a federal cause of action for tortious interference with contract against an entity not a party to the contract, but at the same time held that section 301 preempted an identical state law claim.  *Id*. at 899.

[9]     We note that Baker's claims against White, in his official capacity as manager of Farmers, may also be preempted for the same reasons as his claims against Farmers.  As defined in both the NLRA and the LMRA, an employer includes "any person acting as an agent of an employer, directly or indirectly . . . ."  29 U.S.C. § 152(2) (1993 Supplement).  White, as manager for Farmers, was thus an employer for purposes of determining whether the claims against him were preempted by section 301.

18

with the grievance/arbitration procedures required by the CBA and dismissed the action without prejudice for failure to exhaust his available remedies. Defendants cross-appeal from this dismissal, claiming that it should have been with prejudice. Baker claims that, because an arbitrator has no authority to address matters not addressed by the CBA, and because the CBA does not address intentional torts, arbitration pursuant to Article 29 of the CBA could not provide redress for his emotional distress claims.

It is clear that Baker's claims were properly dismissed for failure to exhaust the grievance procedures in the CBA. *Republic Steel Corp. v. Maddox*, 85 S.Ct. 614, 616 (1965) ("As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress.") (original emphasis); *Strachan v. Union Oil Co.*, 768 F.2d 703, 704 (5th Cir. 1985) ("The law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in a collective bargaining agreement."). Therefore the only question is whether this dismissal should have been with or without prejudice.

Defendants argue that the dismissal should have been with prejudice because Baker did not file a grievance within the time allowed by the CBA and has thus "waived" his rights to his administrative remedies. Article 29 of the CBA directs that grievances "shall be initiated under . . . within five (5) working days after the date of the occurrence on which they are based and

19

not thereafter."

In *Seniority Research Group v. Chrysler Motor Corp.*, 976 F.2d 1185 (8th Cir. 1992), the Eighth Circuit faced but did not reach an argument almost identical to the one in the instant case. There the United Auto Workers Union argued that dismissal for failure to exhaust intra-union remedies should have been with prejudice, because the plaintiffs were time barred from pursuing an inter-union appeal. Although the court declined to address that contention, because it had not been briefed, it stated: "The normal consequence of a holding that a plaintiff has failed to exhaust intra-union remedies is a dismissal without prejudice. The plaintiff, once these remedies are exhausted, if complete relief has not been obtained, can return to court." *Id.*, 976 F.2d at 1189.[10]

While we agree that the district court's dismissal of Baker's state tort claim does not preclude him from pursuing any remedies

---

[10] Other courts have allowed dismissal without prejudice, without much discussion of the propriety of such a dismissal and without any indication that the plaintiff would be time-barred from pursuing his administrative remedies. *See Wagner v. General Dynamics*, 905 F.2d 126 (6th Cir. 1990) (affirming, without discussion of prejudice issue, dismissal without prejudice for failure to exhaust internal union appeals procedures); *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 n.3 (9th Cir. 1988) ("The court's order does not say that the dismissal of the section 301 claims is without prejudice, but specifically states that dismissal of the Title VII claims is *with* prejudice. From this we assume that the court intended, as it should have, to dismiss the section 301 claim without prejudice.") (original emphasis); *Chube v. Exxon Chemical Americas*, 760 F.Supp. 557, 562 (M.D. La. 1991) ("Because there is an arbitration proceeding currently pending between the parties, the Court finds that the plaintiff has failed to exhaust his administrative remedies. Consequently, the plaintiff's action for wrongful termination is premature and must be dismissed without prejudice.").

20

provided him by the CBA, we determine that the district court's conclusion that those tort claims are preempted by section 301 is final and should not be relitigated.[11]  Baker may not refile his intentional infliction of emotional distress claim in state court, nor may he bring it in federal court under the federal labor laws, as he has not exhausted grievance procedures.

Accordingly, we modify the district court's dismissal of Baker's claims of intentional infliction of emotion distress to dismissal *with* prejudice, except that the judgment shall not prejudice what rights Baker may have to pursue any remedies provided by the CBA or other contract.

## Conclusion

For the reasons stated above, the order of the district court denying Baker's motion to remand this action to state court is AFFIRMED.  The dismissal of the action is MODIFIED to be a dismissal with prejudice, except that the judgment shall not prejudice whatever rights Baker may have to pursue contractual remedies.

AFFIRMED AS MODIFIED

---

[11]    In allowing Baker to pursue contractual remedies, we make no determination whether those remedies are still available to him after this lapse in time.