IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-20073

---

SHERMAN SMITH; TRACY SMITH,

Plaintiffs-Appellants
Cross-Appellees,

versus

HOUSTON OILERS, INC., doing business as
The Houston Oilers; FLOYD REESE; STEVE WATTERSON,

Defendants-Appellees
Cross-Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas

---

June 28, 1996

Before POLITZ, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Sherman Smith and Tracy Smith sued the Houston Oilers and members of the Oilers' staff, alleging that the defendants required their participation in an abusive rehabilitation program under threats of being dismissed from the Oilers and blackballed from other teams in the National Football League. The district court dismissed the state claims based on the abusive rehabilitation program on the ground that those claims were preempted by federal labor law, but it remanded to state court related state claims of intentional infliction of emotional distress to the extent that those claims arose from the allegations of threatened blackballing.

The players appeal the dismissal, and the Oilers cross-appeal the order remanding to state court.

We conclude that all claims are preempted by federal labor law.  We affirm the dismissal, vacate the order remanding to state court, and remand with instruction to dismiss those claims as well.

I.

Sherman Smith and Tracy Smith alleged the following facts, and we accept them as true in the present posture of the case:  Sherman Smith and Tracy Smith each signed a one-year contract to play professional football for the Houston Oilers.  During preseason training camp in the summer of 1994, Sherman broke his thumb and Tracy tore a leg muscle.  These injuries prevented them from playing, and they were placed in a routine rehabilitation program with other injured players.  In the first week of required player cuts, however, the Oilers sought to dismiss Sherman and Tracy.  But since the National Football League prohibits teams from terminating football players while they are recovering from football-related injuries, the Oilers offered to settle Sherman's and Tracy's contracts for a "meager" sum if they left voluntarily.  Sherman and Tracy rejected these offers.

According to the Smiths' allegations, Floyd Reese and Steve Watterson of the Oilers responded by compelling Sherman and Tracy to submit to severe abuse in a phony "rehabilitation" program designed to coerce them into leaving the team.  The abuse, they allege, included:  reduction of rehabilitation treatment previously

allowed, such as stretching and ice treatment; sleep deprivation resulting from morning workouts beginning at 4:00 a.m. and evening workouts ending at 11:00 p.m.; strenuous exercise that far exceeded previous demands, including humiliating water-barrel-pulling exercises; veiled threats of dismissal for noncompliance with rehabilitation; intentional confusion as to workout schedules; and threats to blackball Sherman and Tracy from playing for other NFL teams in the future.

No other players participated in this abusive program. Three days after Sherman and Tracy began the program, Sherman collapsed during a 4:00 a.m. workout and was taken to the hospital. Later that day, Tracy complained to the NFL Players Association, after which the Oilers ceased the program.

Sherman Smith and Tracy Smith sued the Houston Oilers, Reese, and Watterson in Texas state court, alleging state law claims of coercion, duress, extortion, assault and battery, and intentional infliction of emotional distress. The Oilers removed to federal court on the ground that the claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Oilers then moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6), arguing that their resolution turned on an analysis of the collective bargaining agreement between the NFL and the players union, and that the claims therefore had to be resolved pursuant to the CBA's arbitration provisions. The players moved to remand the case to state court, arguing that the district court lacked subject matter jurisdiction over their state-law claims.

3

The district court dismissed the claims based on the abusive rehabilitation program, agreeing with the Oilers that those claims were preempted by LMRA § 301 because their resolution would require analysis of the CBA. The court remanded to state court, however, the players' claims of intentional infliction of emotional distress based on alleged blackballing threats, concluding that blackballing threats "could not possibly be sanctioned by any labor contract." The players appeal the dismissal of their non-blackballing claims. The Oilers cross-appeal the order remanding the players' claims of infliction of emotional distress based on threatened blackballing.

## II.

The players bring two arguments. First, the players contend that the district court erred in holding that their claims of abuse were "inextricably intertwined" with the CBA and hence preempted by § 301 of the LMRA. Second, in the alternative, they argue that the district court erred in deciding that the Oilers' alleged conduct was not sufficiently outrageous to override § 301 preemption under Farmer v. United Bhd. of Carpenters & Joiners, 490 U.S. 290 (1977). We conclude that the district court properly dismissed the claims based on the allegedly abusive rehabilitation program.

### A.

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the

4

parties." 29 U.S.C. § 185. The Supreme Court has held that LMRA § 301 preempts state-law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). Accordingly, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles — necessarily uniform throughout the nation — must be employed to resolve the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988).

In considering a claim of intentional infliction of emotional distress, we have stated that "the question of preemption turns on whether the conduct upon which the claim is grounded is governed by the CBA. If the agreement would not condone the activity, there is no preemption. If the conduct arises out of activities covered in the agreement, however, courts generally hold that the emotional distress claim is preempted." Baker v. Farmers Elec. Coop., Inc., 34 F.3d 274 (5th Cir. 1994). Thus, on this view, LMRA preemption typically does not occur "where the allegedly tortious conduct could not have been sanctioned by the CBA, for example in cases concerning assault and battery or sexual harassment." Id. at 281; see Reece v. Houston Lighting & Power Co., 79 F.3d 485, 487 (5th Cir. 1996) (concluding that LMRA § 301 preempted state-law claims of discrimination and intentional infliction of emotional distress

because resolution of claims would require interpretation of CBA provisions on promotion, seniority, and training assignments).

The district court here concluded that LMRA § 301 preemption applied because the CBA authorized NFL teams to require players to participate in rehabilitation programs. The court explained:

> In the instant matter, most of the alleged tortious conduct revolved around the required participation by the players in a rehabilitation program. Rehabilitation programs are condoned by the CBA and the individual player contracts. For example, paragraph 8 of the player contract states that the player warrants he will maintain excellent physical condition. Article [VIII] of the CBA further provides that `material failure to follow rehabilitation program prescribed by Club physician or trainer' can result in a maximum fine of $1,000. It is evident from these provisions that the underlying conduct of the team and the individual defendants could be permitted by the CBA. Accordingly, the Court determines that the causes of action which stem from the `abusive' rehabilitation program are inextricably intertwined with the CBA and are therefore preempted by § 301.

The players do not dispute that the CBA at issue here permits NFL teams to require their players to participate in rehabilitation and conditioning programs. Rather, the players urge that the district court erred because the Oilers' demands in rehabilitation were so egregious that the CBA could not possibly have condoned them.

The players contend with considerable force that LMRA § 301 preemption generally does not apply to claims based on certain types of tortious conduct that a CBA could never condone, such as physical battery. But such inquiry into whether a CBA "condoned" a defendant's conduct is only a means for addressing the ultimate question whether "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." Lingle 486 U.S. at 405-06. Where the complained-of actions consist entirely of an

6

employer's physical battery of an employee, there is no need for reference to a labor agreement; in such cases, it typically makes sense to say that, because the CBA at issue could not have condoned such conduct, resolution of the plaintiff's claim for battery does not depend on the meaning of the terms of the CBA. This comports with an underlying appreciation that the employer's physical attack on the employee is properly regarded as an issue of state law, not a matter of federal labor concern.

Here, however, the alleged misconduct cannot be separated from the underlying dispute between the players and the Oilers over the adequacy of the Oilers' offer of termination pay. That dispute is fundamentally a labor dispute; indeed, the abuse complained-of by the players occurred only because they wanted to remain with a team that did not want them. There is no allegation that anyone from the Oilers' management or staff committed a direct act of physical violence against Sherman Smith or Tracy Smith. Rather, the abuse of the two players resulted from their compelled participation in an ostensible rehabilitation program under threats of termination or blackballing. The players could have avoided the abuse by refusing to participate. In sum, the complained of conduct was the Oilers' unreasonable negotiating position regarding termination, not any infliction of violence upon the two players.

The players could have complained to the league office earlier. The quick response to their complaint belies the effort to distance the dispute over contract rights and excessive workout schedules from the CBA. Indeed, since the labor dispute is at the

7

heart of the players' complaints, we think that those complaints are not too peripheral a concern for the federal labor laws. In short, because we are persuaded that the underlying labor dispute over termination pay cannot be divorced from the Oilers' conduct in forcing the players to choose between the terms of termination and an excessively demanding rehabilitation program, we conclude that resolution of the players claims in this case of professional athletes is too dependent on an analysis of the CBA to escape § 301 preemption.

Another way of stating this is that we have here a case involving contract rights, not condoned violence. That is to say, players can legally consent to challenging workouts and rigorous rehabilitation sessions. Whether the Oilers had a legal right to require the players either to endure the workouts or quit is therefore a question of contract law. As the contract at issue is a CBA, federal, not state, law governs.

B.

The players contend in the alternative that if their claims are otherwise preempted, they are nevertheless entitled to pursue their claims in state court under an exception to federal preemption where the defendants' "outrageous conduct" is merely a peripheral concern of federal law. See Farmer v. United Bhd. of Carpenters & Joiners, 430 U.S. 290 (1977). In Farmer, a union officer claimed intentional infliction of emotional distress under California law, alleging that other union officers had engaged in "outrageous conduct, threats, intimidation, and words," causing him

8

"grievous mental and emotional distress as well as great physical damage." Id. at 301. In deciding whether the claim was preempted, the Supreme Court cautioned that "inflexible application of the [preemption] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." Id. at 302; see also San Diego Bldg. Trade Council v. Garmon, 359 U.S. 236, 243-44 (1959) (emphasizing that preemption does not occur where conduct "was a merely peripheral concern of the [LMRA, . . . or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the State of the power to act"). The Court concluded that the federal labor laws did not preempt the union officer's emotional-distress claim, explaining that "there is no federal protection for conduct on the part of union officers which is `so outrageous that no reasonable man in a civilized society should be expected to endure it.'" Id. at 303.

We agree with the district court that the Oilers' alleged misconduct was not sufficiently outrageous to defeat preemption under Farmer. That is, since we think it necessary to refer to the CBA to determine the extent to which the Oilers' rehabilitation demands were permissible, it is likewise necessary to measure the outrageousness of their conduct by reference to what the CBA authorizes. Cf. Reece, 79 F.3d at 487 (holding that LMRA § 301 preempted plaintiff's claim of intentional infliction of emotional

9

distress after observing that, "to evaluate whether [defendant's] conduct was `outrageous,' the conduct must be measured against the CBA").

### III.

The Oilers argue on cross-appeal that the district court erred in remanding to state court the players' claims of intentional infliction of emotional distress resulting from the Oilers' alleged blackballing threats. The Oilers contend that such claims based on allegations of threatened blackballing are claims of unfair labor practices, and as such are preempted by § 7 and § 8 of the National Labor Relations Act, 29 U.S.C. § 151 et. seq. Though the Oilers are asserting NLRA preemption for the first time on appeal, we may consider the argument since NLRA preemption is an issue of subject matter jurisdiction. See International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 389-93 (1986).

We agree that NLRA §§ 7 and 8 preempt the players' claims of intentional infliction of emotional distress based on blackballing threats. Section 8(a) of the NLRA provides, in relevant part, that "[i]t shall be an unfair labor practice for an employer — (1) to interfere with, restraint, or coerce employees in the exercise of the rights guaranteed in [NLRA § 7]." 29 U.S.C. § 158(a). Section 7 of the NLRA in turn states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities

10

except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157. "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Garmon, 359 U.S. at 245.

The players do not dispute that blackballing is an unfair labor practice proscribed by § 7 and § 8 of the NLRA; rather, they argue that because they did not engage in any "concerted activity" as contemplated by NLRA § 7, the NLRA does not govern the Oilers' blackballing threats, which were directed toward the players' non-concerted activity. This argument lacks merit. See NLRB v. City Disposal Sys., Inc., 465 U.S. 822, 840-41 (1984) (holding that honest and reasonable invocation of collectively bargained right constitutes "concerted activity" under § 7 of NLRA). We conclude that § 7 and § 8 of the NLRA preempt the emotional-distress claims based on the Oilers' blackballing threats.


IV.

We AFFIRM the district court's dismissal of the plaintiffs' claims based on the abusive rehabilitation program. We VACATE and REMAND to the district court its order remanding to state court the claims of intentional infliction of emotional distress based on blackballing threats with instructions to dismiss those claims.

11