Carl E. NIEHAUS, Plaintiff–Appellee,

v.

GREYHOUND LINES, INC., Defendant,

Amalgamated Transit Union, AFL–CIO, CLC, and National Local 1700–ATU, AFL–CIO, CLC, Defendants–Appellants.

No. 97–17384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1999.

Decided April 12, 1999.

David S. Allen, Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, Illinois, for the defendants-appellants.

Joseph E. Orzano, Reno, Nevada, for the plaintiff-appellee.

Before: WOOD,[*] THOMPSON, and THOMAS, Circuit Judges.

WOOD, Circuit Judge:

Plaintiff-appellee Carl E. Niehaus was employed by Greyhound Lines, Inc. from 1961 until 1995. Niehaus lost his job with Greyhound in January 1995 and soon thereafter filed a wrongful termination lawsuit in Nevada state court against Greyhound, the Amalgamated Transit Union, which represented Greyhound employees, and several individuals. The defendants removed the case to federal court. After disposing of all of Niehaus' federal claims, the district court held that his remaining state law claims were not preempted by federal labor law and remanded the matter to state court. Defendant-appellants, Amalgamated Transit Union and Amalgamated Transit Union Local 1700, appeal, arguing that preemption was mandatory under the facts of this case, and that the district court's decision to remand the matter to state court was therefore in error.

## I. BACKGROUND

From 1961 until 1986, Carl Niehaus was employed as a Greyhound "station employee" in various positions, all of which were represented by Amalgamated Transit Union Local 1225 ("Local 1225"), a local union affiliated with the Amalgamated Transit Union ("International Union"). In 1986, Niehaus was offered a non-union position in Greyhound management. Niehaus claims that while he was considering the move to management, Russell Buell, the president of Local 1225, assured him that he could return to union status if he ever left Greyhound management. At that time, the collective bargaining agreement applicable to Niehaus' position provided:

> All present bargaining unit members who had accepted supervisory status prior to December 3, 1983, will continue to retain and accumulate seniority as in the past. Effective December 3, 1983, employees under the terms of this agreement represented by Locals 1055, 1222, 1223, 1225, 1384, and 1508 accepting official positions with the Company will retain, but not accumulate seniority.

In June 1986, Niehaus accepted the management position. He remained in management until January 1995. Niehaus claims that, in 1994, he consulted his supervisors at Greyhound and Buell about his decision to return to the union. In early January 1995, Niehaus notified both Greyhound and Amalgamated Transit Union Local 1700 ("Local 1700")[1] of his "decision to return to the Amalgamated Transit Union unit effective January 16, 1995," and that he was "relinquishing the supervisory position of Customer Service Manager." Niehaus asserts that he believed that, in order to return to the union, he had to resign from management, notify the union of his decision to return, and wait to be reinstated by the union. However, Local 1700 informed Niehaus that, because he had been in a management position for longer than two years, he did not have a right to return to union status based on the new collective bargaining agreement

---

[*] The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. After January 1, 1994, Local 1225 no longer represented Greyhound employees. At that time, Local 1700 became the exclusive bargaining representative for Greyhound employees.

which went into effect March 19, 1987. This agreement provided:

> Unit employees accepting supervisory positions with the Company shall retain seniority during the first twenty-four (24) months in such positions, and shall suffer no loss of seniority if they return to the unit within that time.

Meanwhile, Greyhound treated Niehaus' notification as a resignation. Niehaus contacted Local 1700 and then the International Union repeatedly, attempting to convince them of his "right" to return to union status. The unions continued to assert that Niehaus had no right to return to union status and would have to apply to Greyhound as a new employee. If he was hired, he could then return to the union.

In June 1996, Niehaus filed suit in Nevada state court against Greyhound, his former supervisor, and the International Union. The defendants removed the lawsuit to federal court, where Niehaus filed an amended complaint adding Local 1700 as a defendant. The amended complaint raised three federal claims: breach of the collective bargaining agreement, breach of the duty of fair representation, and age discrimination. It also raised state law claims for fraud, negligent misrepresentation, breach of the covenant of good faith, and breach of contract. Local 1700 filed a motion for summary judgment. The International Union filed a motion to dismiss, which the court treated as a motion for summary judgment because it included matters outside the pleadings. While these motions were pending, Niehaus settled with Greyhound and his former supervisor.

On September 30, 1997, the district court issued an order dismissing Niehaus' duty of fair representation and collective bargaining claims for lack of standing, holding that Niehaus was neither a member of the bargaining unit covered by the 1987 collective bargaining agreement or a third party beneficiary of that agreement. The court also granted summary judgment to the defendants on Niehaus' age discrimination claim based on the conclusion that

Niehaus had failed to make out a prima facie case of age discrimination. The court held that, to the extent that Niehaus was claiming that the defendants breached the collective bargaining agreement, his state law claims were preempted by federal labor law. However, the court determined that Niehaus had alleged other, independent claims arising from a separate contract that Niehaus contends existed between himself and the unions, based on his consultations with union official Buell. Because Niehaus was not subject to the collective bargaining agreement, the court reasoned that this separate contract could not have covered rights included in the collective bargaining agreement and, therefore, Niehaus' state law claims were not based directly on rights created by the collective bargaining agreement. Furthermore, because the court found that Niehaus had no rights under the collective bargaining agreement, it held that his claims neither relied upon nor required an interpretation of that agreement. Therefore, the court held that Niehaus' state law claims based on an alleged separate contract were not preempted and remanded the matter to state court. After filing an unsuccessful Fed.R.Civ.P. 59(e) motion, the International Union and Local 1700 brought this appeal, asserting that Niehaus' state law claims are completely preempted by federal labor law and, therefore, the district court erred in remanding the matter to state court.

## II. ANALYSIS

▮ As an initial matter, Niehaus asserts that this court does not have jurisdiction to review the district court's remand of his pendant state claims. However, a district court order remanding pendant state claims on discretionary grounds is not a remand on jurisdictional grounds pursuant to 28 U.S.C. § 1447(c), *Lee v. City of Beaumont,* 12 F.3d 933, 935 (9th Cir.1993), and we may review remand orders based on grounds other than those set forth in § 1447(c). *Quackenbush v.*

*Allstate Ins. Co.*, 517 U.S. 706, 711–12, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Furthermore, Appellants have presented their appeal in the proper form for review. The district court made the substantive decision that the state law claims were not preempted by federal law, *see Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1539 (9th Cir.1992), and when a remand order is based on a substantive determination of the merits, the order is reviewable on appeal as a final collateral order. *Lee*, 12 F.3d at 936. We have jurisdiction pursuant to 28 U.S.C. § 1291 and turn our attention to the merits of Appellants' claims.

■ The unions argue that the district court erred in remanding Niehaus' state law claims to state court because the claims were preempted by federal labor law. A district court's decision that state law claims are not preempted by federal law is a question of law which we review *de novo*. *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir.1998).

■ "Section 301 of the Labor Management Relations Act (LMRA) preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an interpretation of a collective bargaining agreement." *Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892, 894 (9th Cir.1997) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). This is to ensure uniform interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The unions argue that all of Niehaus' state law claims require interpretation of the collective bargaining agreement's Supervisor Seniority clause and that preemption is therefore mandatory. Niehaus asserts that his claims are not based at all on the collective bargaining agreement but rather on two "verbal agreements" that he entered into with Russell Buell, the president of the local union. Niehaus claims that his consultations with Buell, before accepting the man-

agement position and at the time he decided to return to union status, resulted in verbal agreements in which the unions, through Buell, assured Niehaus that he could transfer from a supervisory position to a union membership position. Niehaus contends that, through these verbal agreements, the unions promised to assist him in returning to a union position within Greyhound, should he decide to resign his management position.

The unions first assert that Niehaus has conceded that his claims require interpretation of the collective bargaining agreement. For support, they point to Niehaus' testimony in his deposition that the two verbal agreements were based on Buell's interpretation of the collective bargaining agreement. However, even if Buell relied on his interpretation of the collective bargaining agreement in his consultations with Niehaus, it would not affect the determination of whether Buell entered into a separate agreement to assist Niehaus in returning to a union position within Greyhound. Niehaus' testimony does not preclude his state law claims. We therefore must determine whether Niehaus' state claims require interpretation of the collective bargaining agreement.

■ Niehaus asserts three contract law claims which allege that the unions breached both the covenant of continued employment and the implied covenant of good faith and fair dealing and interfered with Niehaus' contract for continued employment with Greyhound. Niehaus bases his contract claims on what he refers to as his "specifically contracted right (completely apart from the [collective bargaining agreement]) to receive the Unions' cooperation in his transfer from management to a working level position, and the Unions' agreement to reinstate his membership in the union." He asserts that the unions were obligated to cooperate in his transfer to a union position because a union official promised him that he would be able to make the transfer. While these claims may give rise to contract defenses

which reference the collective bargaining agreement, when the meaning of the terms of a collective bargaining agreement are not disputed, the mere fact that a collective bargaining agreement will be consulted in the course of state law litigation does not require preemption. *Associated Builders & Contractors, Inc. v. Intern. Brotherhood Of Elec. Workers,* 109 F.3d 1353, 1357 (9th Cir.1997) (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)). The meaning of the collective bargaining agreement in the present case is not in dispute. Niehaus has conceded, both in his brief and at oral argument, that he has no rights under the collective bargaining agreement and that he will not rely on the collective bargaining agreement to establish his state court claims. These claims are appropriately remanded to state court.

 Niehaus also raises fraud and negligent misrepresentation claims based on the fact that the union allegedly informed him that he would not be discharged, or treated as resigned, as a consequence of the vacating of his management position in order to return to union status. Under Nevada law, the elements of a fraud claim are (1) defendant's false representation; (2) knowledge that the representation was false; (3) intent to defraud, i.e., to induce the plaintiff to act or refrain from acting; (4) justifiable reliance; and (5) damages. *Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 825 P.2d 588, 592 (1992). Furthermore, the Nevada Supreme Court, in *Bill Stremmel Motors, Inc. v. First National Bank of Nevada,* 94 Nev. 131, 575 P.2d 938, 940 (1978), adopted the Restatement (Second) of Torts definition of negligent misrepresentation, which states:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or

competence in obtaining or communicating the information.

Niehaus claims that he relied upon Buell's promise that he could transfer from management to a union position whenever he so desired. The unions assert that, for both the fraud and negligent misrepresentation claims, Niehaus would have to show that his reliance was justified in light of the collective bargaining agreement, "[s]ince Niehaus' attempt to transfer from a supervisor position to one within the bargaining unit was covered by the collective bargaining agreement." However, determining whether Niehaus' reliance on Buell's statements was justified in light of the collective bargaining agreement does not call for an interpretation of the agreement because the parties do not dispute the meaning of any of its relevant provisions. Niehaus concedes that he has no rights under the agreement, a position that the unions have embraced throughout the litigation. The resolution of Niehaus' tort claims requires a determination of whether Niehaus knew about the provisions of the collective bargaining agreement, not an interpretation of the agreement. *See Beals,* 114 F.3d at 895. The district court did not err in remanding these claims to state court. Additionally, if, in state court, Niehaus attempts to base his claims on interpretation of the collective bargaining agreement, the unions can raise preemption as a defense. *See, e.g., Union Pac. R.R. Co. v. Harding,* 114 Nev. 545, 958 P.2d 87 (1998); *see also Associated Builders & Contractors, Inc.,* 109 F.3d at 1358 n. 7 (holding that claims were not preempted and remanding them to state court while stating "our decision in no way precludes appellees from raising the defense of federal labor law preemption in state court.").

 As a final matter, the unions argue that the district court erred in considering as part of its preemption determination the fact that, if Niehaus' state law claims were preempted, he would be left without a remedy. However, regardless of whether the district court should have con-

sidered Niehaus' potential lack of a remedy, the decision to remand was correct. A *de novo* review of the matter, without consideration of the potential lack of a remedy, shows that Niehaus' state law claims do not require the interpretation of a collective bargaining agreement and, therefore, are not preempted.

### III. CONCLUSION

The decision of the district court is AFFIRMED.