**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATHY J. WARD, individually;
DORA STARNES, individually;
BERTHA GARCIA, individually;
MANUELA PENA, individually;
NANCY ESPINOSA, individually;
MARIA PANIAQUA, individually,
      *Plaintiffs-Appellants,*

    v.

CIRCUS CIRCUS CASINOS, INC., a
Nevada Corporation,
      *Defendant-Appellee.*

No. 04-17098

D.C. No.
CV-03-01184-PRO

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued October 16, 2006
Submitted January 4, 2007
San Francisco, California

Filed January 10, 2007

Before: Robert R. Beezer, Diarmuid F. O'Scannlain, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Beezer

215

**COUNSEL**

Romeo R. Perez, Las Vegas, Nevada, for the plaintiffs-appellants.

Lionel Sawyer & Collins, Las Vegas, Nevada, for the defendant-appellee.

**OPINION**

BEEZER, Circuit Judge:

We consider whether federal labor law preempts union members' state law tort claims. Six employees (the "Workers") claim their employer, Circus Circus Casinos, Inc. ("Circus"), committed torts against them. The district court granted summary judgment in favor of Circus, holding that the Workers' claims were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), the parties' Collective Bargaining Agreement ("CBA") and the Nevada Industrial Insurance Act. The district court also denied the Workers' motion to amend their complaint and granted costs and attorney's fees in favor of Circus.

We have jurisdiction under 28 U.S.C. § 1291. We reverse the district court's grant of summary judgment, affirm the denial of the motion to amend, and remand with instructions to remand to state court.

**I**

During the relevant time period, the Workers were employed by Circus and were members of a labor union. The 1997-2002 CBA between Circus and Local Joint Executive Board of Las Vegas governed the Workers' terms of employment. The CBA provided that union representatives may communicate with employees regarding union business so long as such activities do "not interfere with the conduct of the Employer's business or with the performance of work by employees during their working hours." Under the CBA, Circus had the right to direct and control its employees. Disputes between Circus and the union regarding the interpretation or application of these CBA provisions had to be resolved by arbitration.

On May 3, 2002, Circus employees including the Workers met during a scheduled work break in the Circus employee

dining room. The purpose of the meeting was to distribute leaflets and inform union members of the progress on contract negotiations. After participants began distributing leaflets, employee Al Williams stood on a chair and spoke about union members defending their employment rights. In response, meeting participants began chanting and shouting phrases such as "union, yes" and "we want a contract."

Soon after the chanting began, Circus security guards interrupted the meeting and told the participants to leave. The participants instead locked arms in a circle around Williams to prevent the guards from getting near him. The guards pushed through the participants, pulled Williams off the chair and handcuffed him. The Workers allege that in the process the security guards grabbed, pushed and knocked them down.

In September 2003, the Workers brought an action in Nevada state court, alleging that Circus was liable for (1) assault and battery, (2) false imprisonment, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) negligent entrustment and (6) negligent hiring, training and supervision. Circus removed the action to the United States District Court for the District of Nevada. The Workers moved to remand to state court, which the district court denied. In April 2004, Circus moved for summary judgment, contending that § 301(a) of the LMRA preempted the Workers' claims, that the Workers failed to exhaust their administrative remedies under the CBA and that the Nevada Industrial Insurance Act provided the exclusive remedy for the Workers' claims. Almost two months after Circus filed its motion, the Workers moved to amend their complaint to recharacterize the May 3, 2002, "labor union meeting" as an "educational session" or similar non-meeting event. The district court granted Circus' motion for summary judgment on all three grounds and denied the Workers' motion to amend as futile and in violation of local rules.

## II

**[1]** Circus argues that we should dismiss the appeal based on the Workers' numerous violations of Federal Rule of Appellate Procedure 28(a) and Ninth Circuit Rule 30-1. Numerous and egregious procedural violations may warrant dismissal of an appeal. *See In re O'Brien*, 312 F.3d 1135, 1136-37 (9th Cir. 2002) (dismissal warranted by insufficient record and improper brief format and content). Additional considerations favoring dismissal may include (1) failure of the appellant to cure procedural defects and (2) a non-meritorious appeal. *See Han v. Stanford Univ.*, 210 F.3d 1038, 1040 (9th Cir. 2000) (noting that appellant failed to file reply brief to cure defects); *N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1146 (9th Cir. 1997) ("[W]e would feel most uneasy if this were an otherwise meritorious appeal, which cried out for reversal of the district court's decisions.").

**[2]** The Workers' appeal is meritorious, and their procedural violations were not so egregious as to prevent Circus from meaningfully responding to the appeal. We conclude that these considerations outweigh the gravity of the procedural violations. Our September 25, 2006, order to appellants' counsel to show cause why sanctions should not be imposed is hereby discharged.

## III

We reverse the district court's grant of summary judgment in Circus' favor. A district court's grant of summary judgment is reviewed de novo. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001). Viewing the evidence in the light most favorable to the nonmoving party, we determine "whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact." *Id.*

**[3]** A district court's finding of preemption by § 301 of the LMRA is an issue of law that we review de novo. *Humble v.*

*Boeing Co.*, 305 F.3d 1004, 1008 (9th Cir. 2002). Section 301 preempts state law claims that require the court to interpret a CBA provision that is reasonably relevant to the resolution of the dispute. *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001) (en banc). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id.* at 691. When the parties do not dispute the meaning of contract terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption. *Id.* at 690-91. A defense based on the CBA is alone insufficient to require preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987); *Cramer*, 255 F.3d at 690.

**[4]** For each of the Workers' claims, the determinative question "is whether 'the state law factual inquiry . . . turn[s] on the meaning of any provision of the collective-bargaining agreement.' " *Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir. 1991) (quoting *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988)). The Workers bring two types of claims based on the alleged physical force used against them by the Circus security guards. The first type directly challenges the force used and includes claims of assault and battery, intentional infliction of emotional distress and false imprisonment. The second type involves Circus' alleged negligence and includes the Workers' claims of negligent infliction of emotional distress, negligent entrustment and negligent hiring, training and supervision.

**[5]** As to both types of claims, Circus argues that the CBA must be interpreted to determine whether the Workers' union activity interfered with company business and was in violation of the CBA. The Workers contest the restraint, physical force and threats used against them by Circus security guards. Their claims do not depend on an interpretation of permissible union communications. Even if the Workers' activities interfered with Circus' operations or were not permissible under the CBA, Circus may be liable under state law if the facts sur-

rounding the guards' behavior, as alleged by the Workers, are proved. *See Galvez*, 933 F.2d at 777 (no need to interpret CBA because "acts alleged would violate state law irrespective of the identity of the wrongdoer or of his victim").[1]

**[6]** The CBA also does not set forth procedures for employee control or authorize the use of threats, physical force or restraint. CBAs typically do not govern such conduct, and state claims involving physical threats or force used against an employee usually are not preempted. *See Smith v. Houston Oilers, Inc.*, 87 F.3d 717, 720 (5th Cir. 1996) ("Where the complained-of actions consist entirely of an employer's physical battery of an employee, there is no need for reference to a labor agreement[.]"); *Galvez*, 933 F.2d at 777 (assault and battery claim not preempted). The Workers' claims do not require interpretation of the agreement.[2] *See Miller v. AT&T Network Sys.*, 850 F.2d 543, 550 n.5 (9th Cir. 1988) (state tort claims are not preempted "if the particular CBA does not govern the offending behavior").

**[7]** Circus contends that its right to direct and control its employees pursuant to the CBA requires interpretation and

---

[1]Circus attempts to distinguish *Galvez* from this case by pointing to the Workers' mild injuries, the alleged justification for the Circus guards' conduct and the connection to union activity. Such considerations do not resolve the preemption analysis in this case. The crucial inquiry is whether the Workers' claims *require* interpretation of the CBA. *See Galvez*, 933 F.2d at 776.

[2]The cases relied on by Circus are distinguishable because they involved claims arising out of the implementation of CBA procedures such as investigation, discipline or discharge. *See, e.g.*, *Miller v. AT & T Network Sys.*, 850 F.2d 543, 545, 551 (9th Cir. 1988) (involving plaintiff's reassignment and dismissal); *Williams v. Lear Operations Corp.*, 73 F. Supp. 2d 1377, 1382 (N.D. Ga. 1999) (involving employer's alleged failure to discipline or discharge harassing co-worker). Circus also relies to a great extent upon an unpublished decision, *Romero v. Hilton Hotels Corp.*, 1991 WL 340574, Civ. No. 90-00152 (D. Hawaii June 3, 1991), which involved claims arising from search and investigation procedures governed by the CBA.

amounts to consent by the Workers to the challenged conduct. To the contrary, Circus' right to direct and control its employees cannot reasonably sanction any level of threats, physical force or restraint, even if the employees' activities interfere with company business. *Cf. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 25 n.28 (1983) ("[A] state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract."), *superseded by statute on other grounds*, 28 U.S.C. § 1441(e). The connection between Circus controlling its employees and using any amount of physical force against them is even more attenuated than the connection held to be insufficient in this court's en banc *Cramer* decision. *See* 255 F.3d at 694-95 (claims involving hidden video cameras in bathrooms do not fall within the scope or require interpretation of CBA provision for using surveillance video).

**[8]** Circus' argument constitutes a defense or justification for the physical force used against the Workers and does not warrant preemption. *See Caterpillar*, 482 U.S. at 398-99. For example, Circus may assert state law defenses concerning a hotel owner's right to use reasonable force to remove a trespasser or anyone acting in a disorderly manner. The fact that the CBA may be consulted to determine whether the guards' behavior was reasonable does not require preemption. *See Cramer*, 255 F.3d at 690-91. A state law claim is not preempted simply because it may require consideration of the same factual issues as a federal labor claim. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988); *cf. Smith*, 87 F.3d at 720 (physical force against employees "is properly regarded as an issue of state law, not a matter of federal labor concern"). Circus' tort liability does not hinge upon whether the Workers' activities violated the CBA.

**[9]** As to the Workers' negligence based claims, Circus argues that the CBA must be interpreted to determine the particular duties of care owed to the Workers. State law negli-

gence claims are preempted if the duty relied on is "created by a collective-bargaining agreement and without existence independent of the agreement." *United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990). The Workers do not invoke or refer to any duty arising from the CBA. The Workers refer instead to Circus' duty of care (1) in hiring and entrusting its security guards to protect its property, and (2) to "all foreseeable Plaintiffs" in hiring, training and supervising employees. Circus is "accused of acting in a way that might violate the duty of reasonable care owed to every person in society." 495 U.S. at 371. The Workers' negligence claims do not require interpretation of the CBA.

[10] We conclude that § 301 of the LMRA does not preempt any of the Workers' state law claims. The issue whether the Workers exhausted their remedies under the CBA is moot. We do not have federal jurisdiction to consider preemption by the Nevada Industrial Insurance Act. *See Galvez*, 933 F.2d at 776, 781 (no jurisdiction to consider preemption by California's Workers' Compensation Act because no preemption by LMRA).

Circus argues in the alternative that sections 7 and 8 of the National Labor Relations Act ("NLRA") preempts the Workers' claims. Such preemption, called *Garmon* preemption after the Supreme Court's decision in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), does not alone create federal question jurisdiction. *See Hayden v. Reickerd*, 957 F.2d 1506, 1512 (9th Cir. 1991); *cf. Caterpillar*, 482 U.S. at 398 (NLRA preemption does not provide basis for removal to federal court). *Garmon* preemption vests jurisdiction exclusively in the National Labor Relations Board. *Hayden*, 957 F.2d at 1512. The state court must consider whether *Garmon* preemption controls. *See id.*

## IV

[11] We affirm the district court's denial of the Workers' motion for leave to amend their complaint. We review a dis-

trict court's denial of a motion to amend a complaint for an abuse of discretion. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). The Workers' motion to amend violated the local rules, and the district court may in its discretion deny their motion on that basis alone. *See Waters v. Weyerhaeuser Mortgage Co.*, 582 F.2d 503, 507 (9th Cir. 1978) (court has discretion to deny motion to amend for failing to attach proposed pleading as required by local rule). The proposed amendment also would not have affected jurisdiction. *See Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (overruled on other grounds by *Cramer*, 255 F.3d at 696) (futility of amendment, among other things, weighs against allowing leave to amend). The district court did not abuse its discretion in denying the Workers' motion to amend.

## V

**[12]** In light of our resolution of the preemption issue, we reverse the district court's order of garnishment awarding Circus costs and attorney's fees. Each party shall pay their own costs and fees.

**REVERSED** in part, **AFFIRMED** in part, and **REMANDED** with instructions to remand to state court.