**Eddy ROMERO, Plaintiff–Appellant,**

v.

**SAN PEDRO FORKLIFT, INC., a/k/a S.P.F. Terminals, Inc., a corporation; Peter Balov, an individual, Defendants–Appellees.**

No. 06–55409.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2007.

Filed Feb. 1, 2008.

Laurel N. Carlin, Esq., Laurel N. Haag, Esq., The Law Offices of Carlin & Buchsbaum, Long Beach, CA, for Plaintiff–Appellant.

Ernest J. Franceschi, Jr., Esq., Attorney at Law, Los Angeles, CA, for Defendants–Appellees.

Before: BRIGHT *, PREGERSON, and BEA, Circuit Judges.

* The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for

**554**

MEMORANDUM **

Eddy Romero ("Romero") appeals the district court's decision to dismiss his complaint pursuant to Rule 12(b)(6) on the basis that Section 301 of the Labor and Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts all of his state law claims. Because Section 301 does not preempt any of Romero's claims, we REVERSE and REMAND with instructions that the district court remand this matter to state court.

## I. Factual and Procedural Background

Romero began working for Appellee San Pedro Forklift ("San Pedro") in 1989 as a forklift operator. Subsequently, he received various raises and a promotion to foreman. He alleges that in 1993 Appellee Peter Balov ("Balov"), President of San Pedro, presented him with a document purporting to establish a pension plan for Romero. Balov allegedly promised Romero that San Pedro would contribute to this pension plan on his behalf. Romero contends that he actually and reasonably relied on this agreement and throughout his employment Balov assured him that the pension plan was in place and being funded. Romero was fired in November 2004. He claims that shortly before his termination he inquired into the status of his pension plan and learned for the first time that none existed.

Romero also claims that he was subject to age discrimination. He alleges superiors made ageist comments against him, that he reported these comments to man-

agement, and that a significantly younger, less experienced person replaced him.

On November 10, 2005, Romero filed a complaint in state court. It included nine causes of action (all under California state law): (1) wrongful termination in violation of public policy; (2) promissory fraud; (3) fraud; (4) fraudulent inducement; (5) promissory estoppel; (6) restitution for unfair business practices; (7) age discrimination; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. Appellees removed the action to federal court on December 16, 2005, and subsequently moved to dismiss Romero's complaint principally on the ground that Section 301 of the LMRA preempts his claims.

Appellees argued that Section 301 preempted Romero's state law claims because his job position was covered by a collective bargaining agreement ("CBA"),[1] which stated that San Pedro did not provide its employees with a pension plan. For this reason, San Pedro contended that Romero could not proceed on any of his state law claims premised on the existence of the independent 1993 agreement that allegedly established a pension plan in his behalf. The district court agreed and granted Appellees' motion. Without issuing a written opinion, the district court signed and approved Appellees' proposed order dismissing all of Romero's claims as preempted by Section 301.

## II. Standards of Review

We review whether the district court properly exercised subject matter

---

the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. During his tenure with San Pedro, Romero's employment was subject to three separate CBAs—each covering a different time period

between 1994 and 2004. For the purposes of this appeal, however, any differences between these CBAs are irrelevant. The parties agree: (1) none of them provided Romero with a pension plan; (2) Romero's job position was covered by each CBA; and (3) Romero was a party to each CBA.

jurisdiction over a removed action *de novo. See, e.g., Providence Health Plan v. McDowell,* 361 F.3d 1243, 1247 (9th Cir. 2004). We review its decision to dismiss a complaint pursuant to Rule 12(b)(6) *de novo. See, e.g., Cleghorn v. Blue Shield of Cal.,* 408 F.3d 1222, 1225 (9th Cir.2005). We also review its conclusion that Section 301 preempts state law claims *de novo. See Cramer v. Consolidated Freightways Inc.,* 255 F.3d 683, 689 (9th Cir.2001) (en banc).

### III. Discussion

*A. Preemption under Section 301 of LMRA*

Section 301 preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Electrical Workers v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer,* 255 F.3d at 691.

 A state law claim is "substantially dependent" on a CBA if it "cannot be resolved without interpreting the applicable CBA." *Id.* But Section 301 does not preempt a claim if a court need merely to "look to" the CBA. *See Livadas v. Bradshaw,* 512 U.S. 107, 122–24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); *Cramer,* 255 F.3d at 690. When the parties do not dispute the meaning of the CBA, the fact that it will be "consulted in the course of state law litigation does not require preemption." *Ward v. Circus Circus Casinos, Inc.,* 473 F.3d 994, 998 (9th Cir.2007) (citing *Cramer,* 255 F.3d at 690–91); *see also Valles v. Ivy Hill Corp.* 410 F.3d 1071,

1076 (9th Cir.2005). Thus, a defense based on the CBA is alone insufficient to require preemption. *See, e.g., Ward,* 473 F.3d at 998 (citations omitted).

When Section 301 preempts a claim "purportedly based on ... state law," that claim is "considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425 (citation omitted). Thus, so long as *any* of a plaintiff's state law claims are preempted by Section 301, the district court may properly exercise subject matter jurisdiction.

*B. Seriatim consideration of Romero's claims*

*1. Wrongful Termination in Violation of Public Policy*

 This Court long ago recognized that Section 301 does not preempt the California tort of wrongful discharge. *See Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 863 (9th Cir.1987); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 668 (9th Cir.1985). Therefore, the district court erred in concluding that Section 301 preempts Romero's claim for wrongful discharge.

*2. Restitution for Unfair Business Practices*

 Romero's unfair business practices claim, under California Business and Professions Code § 17200, is a derivative claim of his cause of action for wrongful termination in violation of public policy (which alleges violations of California Labor Code § 227). Because this latter claim is not preempted by Section 301, neither is Romero's unfair business practices claim. The district court therefore erred in concluding that Section 301 preempts Romero's unfair business practices claim.

### 3. Fraud Claims (Fraud, Promissory Fraud, Fraudulent Inducement)

■ Romero argues that his fraud claims do not require an interpretation of the CBA.[2] First, he concedes that the CBA in force throughout his employment did not provide for a pension plan. Second, he bases his fraud claims on another agreement that predated the CBA. So Romero is not trying to enforce any rights 'founded solely on the CBA.' Appellees do not explain why Romero's fraud claims require an interpretation of the CBA. They simply assert that the fraud claims 'touch and concern' the CBA because the CBA makes plain that no pension plan will be provided. This is not the appropriate focus, however. Section 301 preempts Romero's fraud claims only if a court must interpret the CBA to resolve them. *See, e.g., Cramer,* 255 F.3d at 691.

This Court's decision in *Niehaus v. Greyhound Lines, Inc.,* 173 F.3d 1207 (9th Cir.1999), is directly on point. In *Niehaus,* we held that Section 301 did not preempt plaintiff's fraud and misrepresentation claims because neither claim required an interpretation of the collective bargaining agreement between the parties. *See id.* at 1212. Niehaus sued his union for fraud and misrepresentation on the ground that the union allegedly informed him "that he could transfer from management to a union position whenever he so desired." *Id.* The defendant-union argued that Niehaus needed to show that his reliance on the union's statements was justified in light of the CBA—thus the agreement needed to be interpreted. This Court rejected that contention because the parties did not dispute any of the "relevant provisions" of the agreement. *Id.* Rather, the "resolution of Niehaus' tort claims require[d only] a determination of whether [he] knew about the provisions of the collective bargaining agreement, not an interpretation of the agreement." *Id.; see also Beals v. Kiewit Pacific Co.,* 114 F.3d 892, 895 (9th Cir.1997) (holding that Section 301 did not preempt plaintiff's negligent misrepresentation claims because the court did not have to construe any terms of the applicable CBA); *Felix v. Lucent Tech., Inc.,* 387 F.3d 1146, 1164 (10th Cir.2004).

Romero's fraud claims are no different. He agrees with Appellees that the CBA does not afford him a pension plan. Instead, he argues that he relied upon Balov's initial promise in a separate agreement (that predates the CBA) to provide him with a pension, as well as Balov's alleged subsequent reassurances to that effect. The CBA is then relevant only to the extent that it would enable a factfinder to assess whether Romero's reliance on Balov's promise was justified.

Finally, Romero's complaint also included a purported claim for "promissory estoppel." Nevertheless, Romero has characterized his promissory estoppel cause of action as a "fraud-based claim" in his appellate brief. *See* Opening Br. at 7, 11. Thus, our preemption analysis of Romero's fraud claims applies equally to his so-called "promissory estoppel" claim.

The district court therefore erred in concluding that Section 301 preempts Romero's claims sounding in fraud.

### 4. Age Discrimination

■ This Court has consistently held that Section 301 does not preempt age

---

**2.** Because promissory fraud is merely a particular form of fraud (the elements for both causes of action are exactly the same), the preemption analysis with respect to Romero's fraud claim applies equally to his claim for promissory fraud. *See Lazar v. Superior Court,* 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981, 985 (1996) (citations omitted). The same is true for Romero's claim of fraudulent inducement, which has the same elements as fraud under California law. *See id.* at 984.

discrimination claims brought under the California Employment Act. *See Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286–87 (9th Cir.1989) ("California's age discrimination statute creates a mandatory and independent state right which is not preempted by section 301."); *accord Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir.1993) ("In every case in which we have considered an action brought under the California Employment Act, we have held that it is not preempted by section 301."). The district court therefore erred in concluding that Section 301 preempts Romero's age discrimination claim.

### 5. Intentional Infliction of Emotional Distress

 We recently "discern[ed] some general principles" that courts can employ "to determine when an intentional infliction [claim] will be preempted." *Humble v. Boeing Co.*, 305 F.3d 1004, 1013 (9th Cir.2002). *First*, "if the CBA *specifically* covers the conduct at issue, the claim will generally be preempted." *Id.* (citing *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239–40 (9th Cir.1990)). *Second*, "if the CBA does not 'cover' the allegedly extreme and outrageous conduct, the intentional infliction claim will not [be] preempted." *Id.* (citing *Miller v. AT & T Network Sys.*, 850 F.2d 543, 550 n. 5 (9th Cir.1988)). *Third*, "even if the CBA does purport to cover the conduct at issue, the [intentional infliction] claim still may not be preempted if it has been tacked on to the violation of a separate specific non-negotiable state statute, the violation of which *always* rises to the level of outrageousness." *Id.* at 1013–14 (citing *Miller*, 850 F.2d at 550 n. 5; *Cramer*, 255 F.3d at 697).

Of these principles, the first and second are applicable here. Romero's intentional infliction of emotional distress claim does not relate to any conduct specifically covered by the CBA. His claim stems in part from San Pedro's alleged age discrimination and in part from San Pedro (and Balov) fraudulently claiming for more than ten years that he had a pension plan. Because the CBA does not cover this conduct, a court need not consult it to resolve Romero's claim. Accordingly, Section 301 does not preempt Romero's intentional infliction of emotional distress claim. *Cf. Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir.1991) (finding that Section 301 does not preempt intentional infliction of emotional distress claim when based on allegations of on-the-job harassment that do not require any reference to a CBA).

### 6. Negligent Infliction of Emotional Distress

 With respect to Romero's negligent infliction of emotional distress claim, the analytical framework mirrors that for intentional infliction of emotional distress claims. *See Humble*, 305 F.3d at 1015 (implying that Section 301 preemption analysis is the same for negligent and intentional infliction of emotional distress claims). The key consideration is again whether the claim turns on an interpretation of the CBA. *See Ward*, 473 F.3d at 999 ("State law negligence claims are preempted if the duty relied on is 'created by a collective-bargaining agreement and without existence independent of the agreement.'" (quoting *United Steelworkers v. Rawson*, 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990))). Because Romero's negligent infliction claim does not invoke or refer to any duty arising from the CBA, Section 301 does not preempt it and the district court erred in concluding otherwise.

### IV. Conclusion

Because Romero's state law claims do not require the interpretation of the CBA,

Section 301 does not preempt any of Romero's claims. As there was neither federal question jurisdiction nor diversity of citizenship, the district court lacked subject matter jurisdiction over this action. Accordingly, removal was improper here, and we **REVERSE AND REMAND** with instructions that the district court remand this case to the Superior Court of the State of California for the County of Los Angeles for further proceedings.